**UNITED STATES**

v.

**MAHOWALD et al.**

No. 14927.

United States Court of Appeals, Eighth Circuit.

Jan. 21, 1954.

Elizabeth Dudley, Attorney, Department of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., P. W. Lanier, U. S. Atty., Fargo, N. D., and Roger P. Marquis, Attorney, Department of Justice, Washington, D. C., on the brief), for appellant.

Ilvedson, Pringle & Herigstad, Halvor L. Halvorson, Jr., C. A. Waldron, Bosard & McCutcheon, Minot, N. D., and C. L. Foster, Bismark, N. D., for appellees.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The United States, in connection with the acquisition of land for use in the construction, operation and maintenance of the Garrison Dam and Reservoir Project on the Missouri River, commenced three condemnation proceedings involving fourteen tracts of North Dakota farm lands belonging to various owners. The proceedings were not com-

menced at the same time. The petition in one of them was filed October 2, 1950, in another January 5, 1951, and in the third January 10, 1952.

The three proceedings were consolidated for trial and were tried to a jury commencing October 16, 1952. The sole purpose of the trial was to ascertain what the Government would have to pay for the lands in suit. At the time of trial the Government had not taken possession of the lands nor had it acquired title by filing declarations of taking under the Act of February 26, 1931, 46 Stat. 1421, 40 U.S.C.A. § 258a. The possession and title of the lands were in the owners.

It is conceded that before the commencement of the trial the District Court in chambers inquired of the parties "as to the 'time of taking' of the tracts of land involved in these cases; that it was then agreed between the parties in the presence of the Court that the 'time of taking' of said tracts of land was the 'time of trial' and that testimony as to market values on all of said tracts would be based and set as of the time of trial." It is also conceded that the court instructed the jury that "The only question for consideration is the fair and reasonable market value for cash as of the time of taking, which is now, and not as of any other time"; and further conceded that no objections or exceptions to the court's instructions were taken.

On October 30, 1952, the jury returned separate verdicts determining the market value of each of the various tracts as of the time of trial. The aggregate amount of the jury awards was $169,085.

The Government on November 3, 1952, filed a motion for a remittitur or, in the alternative, for a new trial. The motion was denied by the court on March 11, 1953. Declarations of taking were filed and estimated compensation paid into court by the Government in one of the cases on March 30, 1953, in another on April 6, 1953, and in the third on April 13, 1953.

The court on June 12, 1953, filed findings of fact and conclusions of law and entered judgment upon the jury verdicts. The court determined that the title to the lands in suit vested in the United States on the dates of the filing of the declarations of taking, that the jury awards represented just compensation for the tracts of land in suit, and that the owners were entitled to the full amounts of such awards "with interest thereon at the rate of six per cent per annum from October 16, 1952, the date of the taking, on the full amounts of said verdicts to the dates of the filing of the Declarations of Taking * * * and the deposit in the Register of the Court of the amount of the estimated compensation for each said tract, respectively, * * *."

The Government objected to the allowance of interest on the jury awards from October 16, 1952, to the dates of the filing of the declarations of taking. The court on July 2, 1952, ordered that the deposits by the Government of the full amount of the judgment, including such interest, should be without prejudice to the rights of the Government to appeal from the judgment. This appeal followed.

■■ What constitutes just compensation in a federal condemnation proceeding is a question of federal law. State of Nebraska v. United States, 8 Cir., 164 F.2d 866, 867. The forms and methods of procedure prescribed for the conduct of such proceedings do not and cannot affect "questions of substantive right,—such as the measure of compensation,—grounded upon the Constitution of the United States." United States v. Miller, 317 U.S. 369, 380–381, 63 S.Ct. 276, 283, 87 L.Ed. 336.

■ In United States v. Rogers, 255 U.S. 163, 41 S.Ct. 281, 65 L.Ed. 566, the Supreme Court held that in a condemnation proceeding the owners were entitled, as a part of their just compensation, to interest on the awards from the time when the Government took actual possession to the time deposit was made in

payment of the awards. The court said, 255 U.S. at page 169, 41 S.Ct. at page 282:

"Having taken the lands of the defendants in error, it was the duty of the government to make just compensation as of the time when the owners were deprived of their property."

In the case of Seaboard Air Line Railway Co. v. United States, 261 U.S. 299, 306, 43 S.Ct. 354, 356, 67 L.Ed. 664, the court said:

" * * * Where the United States condemns and takes possession of land before ascertaining or paying compensation, the owner is not limited to the value of the property at the time of the taking; he is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added."

The Supreme Court used the following language in Danforth v. United States, 308 U.S. 271, at pages 284–285, 60 S.Ct. 231, 236, 84 L.Ed. 240:

" * * * Unless a taking has occurred previously in actuality or by a statutory provision, which fixes the time of taking by an event such as the filing of an action, we are of the view that the taking in a condemnation suit under this statute takes place upon the payment of the money award by the condemnor. No interest is due upon the award. Until taking, the condemnor may discontinue or abandon his effort. The determination of the award is an offer subject to acceptance by the condemnor and thus gives to the user of the sovereign power of eminent domain an opportunity to determine whether the valuations leave the cost of completion within his resources. Condemnation is a means by which the sovereign may find out what any piece of property will cost. 'The owner is protected by the rule that title does not pass until compensation has been ascertained and paid * * *.' A reduction or increase in the value of property may occur by reason of legisla-

tion for or the beginning or completion of a project. Such changes in value are incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense."

This Court, in Oliver v. United States, 155 F.2d 73, 75, affirmed—Albrecht v. United States—329 U.S. 599, 67 S.Ct. 606, 91 L.Ed. 532, speaking of a situation where the Government and the land owner have by contract fixed the value of land for purposes of condemnation, said:

" * * * Plainly, where after such a contract the United States acquires possession of the land in the contemplated condemnation proceedings and fails to make payment of the agreed value contemporaneously with the taking, interest must be allowed the owner from the date of taking until payment in order that the constitutional requirement of just compensation may be satisfied. Conversely, where the payment of the agreed value and the taking in the condemnation proceedings are contemporaneous, interest is not allowable."

The case of United States v. Johns, 9 Cir., 146 F.2d 92, presented the same question with which we are confronted, arising out of a similar state of facts, the only difference being that in that case no stipulation such as was entered into at the time of trial of this case was involved. The applicable law was stated in that case concisely and accurately as follows at page 93 of 146 F.2d:

"For the taking of private property, by condemnation or otherwise, appellant is required to pay just compensation. Just compensation is the value of the property taken at the time of the taking. If the taking precedes the payment of compensation, the owner is entitled to such addition to the value at the time of the taking as will produce the full equivalent of such value paid contemporaneously. Interest at a proper rate is a good measure of the amount to be added. Such interest is allowable from the time of the taking, and is not allowable for any period prior to the taking."

754

In the instant case the owners of the lands in suit were not deprived of their property until the declarations of taking were filed by the Government and estimated compensation was deposited. The stipulation made at the trial, obviously for the purpose of fixing the time as of which the market value of the lands in suit should be determined by the jury, deprived the owners of nothing and gave the Government no interest in their lands. To give to the making of this stipulation the full effect of actual possession of the lands in suit by the Government is, we think, unwarranted and unrealistic. The jury awards merely fixed the compensation which would have to be paid for the various tracts in suit if and when the Government took physical possession of them or filed declarations of taking.

The District Court in the judgment appealed from erred in providing for interest on the jury awards from the date of trial to the dates of the filing of declarations of taking. That part of the judgment is reversed.