671 F.2d 336
 UNITED STATES of America, Plaintiff-Appellee,
v.
156.81 ACRES OF LAND, MORE OR LESS, situate IN the COUNTY OF
MARIN, STATE OF CALIFORNIA, Frank W. Lynch, Ellenora C.
Lynch, Edward R. Fitzsimmons, Elizabeth S. Fitzsimmons, Karl
Melchers, Karl W. Melchers, Karen Melchers Stackhouse,
Helene Goode Stackhouse, Defendants-Appellants.
 No. 79-4547.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 13, 1981.
Decided March 12, 1982.
 
 Robert Huddleston, Oakland, Cal., for defendants-appellants.
 Claire L. McGuire, Dept. of Justice, Washington, D. C., Francis B. Boone, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before WALLACE and SKOPIL, Circuit Judges, and KENYON,* District Judge.
 SKOPIL, Circuit Judge:
 
 FACTS AND PROCEEDINGS BELOW
 
 1
 Appellants owned roughly 156.81 acres of undeveloped land in Marin County, California. They had purchased the property for its development potential. It was not income-producing. In July 1976 the United States filed a complaint in condemnation against the land and appellants. The government sought the property for the Golden Gate National Recreation Area. It did not enter into possession nor file a declaration of taking. The complaint sought condemnation of the property and ascertainment and award of just compensation.
 
 
 2
 In July 1977 the jury valued the land, as of June 1977, at $3,799,400. In November 1977 the district court entered judgment on the verdict. The judgment decreed title to the property vested in the United States upon deposit of the amount of the verdict.
 
 
 3
 The government moved for a new trial. The motion was denied in June 1978. In August 1978 the parties appealed and cross-appealed. In November 1978 the appeals were dismissed by stipulation. The government then deposited $3,799,400 with the clerk of the district court. The government subsequently deposited an additional $239,802.90 with the court, representing six percent simple interest on $3,799,400 from the entry to the payment of judgment.
 
 
 4
 In March 1979 the government moved to disallow interest on the judgment. It argued that no interest was due since the government had not taken possession of the property before it paid the judgment. In June 1979 the district court granted the motion over appellants' objection and denied appellants' motion for reconsideration. This appeal followed.
 
 DISCUSSION
 
 5
 Appellants argue that they are entitled to interest on the judgment from the date of valuation to the date of payment. They note that they have remained liable for all expenses relating to the land during that period, but have received no income from it and have been prevented from developing it.
 
 
 6
 In general, "interest is allowable from the time of the taking and is not allowable for any period prior to the taking." United States v. Johns, 146 F.2d 92, 93 (9th Cir. 1944) (footnote omitted). In condemnation proceedings, "the taking generally occurs sometime during the course of the proceeding". United States v. Clarke, 445 U.S. 253, 258, 100 S.Ct. 1127, 1130, 63 L.Ed.2d 373 (1980). See also Fulcher v. United States, 632 F.2d 278, 291 (4th Cir. 1980) (en banc, Phillips, J. concurring). We must decide when, on these facts, the government "took" the appellants' land.
 
 The Supreme Court has stated:
 
 7
 "Unless a taking has occurred previously in actuality or by a statutory provision, which fixes the time of taking by an event such as the filing of an action, we are of the view that the taking in a condemnation suit under this statute (the Flood Control Act of 1928, 33 U.S.C. §§ 702a-702m) takes place upon the payment of the money award by the condemnor. No interest is due upon the award. Until taking, the condemnor may discontinue or abandon his effort. The determination of the award is an offer subject to acceptance by the condemnor and thus gives the user of the sovereign power of eminent domain an opportunity to determine whether the valuations leave the cost of completion within his resources. Condemnation is a means by which the sovereign may find out what any piece of property will cost. 'The owner is protected by the rule that title does not pass until compensation has been ascertained and paid.' "
 
 
 8
 Danforth v. United States, 308 U.S. 271, 284-85, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939) (footnotes omitted).
 
 
 9
 Danforth construed 33 U.S.C. § 702d. 308 U.S. at 282, 60 S.Ct. at 235. In this case, the government has proceeded under the general condemnation statute, 40 U.S.C. § 257. Section 702d contains no substantive rules governing condemnation cases. In construing that statute, the Court must have relied on general rules for condemnation proceedings.
 
 
 10
 Danforth expressly excepted cases where a taking has occurred in fact before the condemnor pays the landowner. The Supreme Court has refused to adopt any hard and fast rule determining when a taking occurs. There is no per se rule that no taking occurs until money changes hands or title passes. United States v. Dow, 357 U.S. 17, 22, 78 S.Ct. 1039, 1044, 2 L.Ed.2d 1109 (1958).
 
 
 11
 In Dow, the Court held that a taking occurred when the government took physical possession of property, even though that event preceded passage of title. Id. The Court noted that a contrary rule would absolve the government of the duty to pay interest until title passed, even though it already had possession. Id. at 24, 78 S.Ct. at 1045. Such a rule would permit the government to wait and acquire title at a time when market conditions were favorable. The Court rejected a rule producing "such obvious incongruities and undesirable possibilities." Id. at 25, 78 S.Ct. at 1046. See also United States v. 422,978 Square Feet of Land, 445 F.2d 1180, 1188 (9th Cir. 1971); Fibreboard Paper Products Corp. v. United States, 355 F.2d 752, 754-55 (9th Cir. 1966).
 
 
 12
 Eminent domain proceedings are different from inverse condemnation actions. United States v. Clarke, supra, 445 U.S. at 255, 100 S.Ct. at 1128. They are not, however, distinct for all purposes. Fulcher v. United States, supra, 632 F.2d at 284. Inverse condemnation principles determine when "(g)overnment regulation (is) so onerous as to constitute a taking." American Savings & Loan Ass'n v. County of Marin, 653 F.2d 364, 368 (9th Cir. 1981) (quoting Goldblatt v. Town of Hempstead, 369 U.S. 590, 594, 82 S.Ct. 987, 990, 8 L.Ed.2d 130 (1962)). See also Penn Central Transportation Co. v. New York City, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). These principles are useful in determining when government action pursuant to the eminent domain power constitutes a taking. See San Diego Gas & Electric Co. v. City of San Diego, 450 U.S. 621, 636, 101 S.Ct. 1287, 1296, 67 L.Ed.2d 551, 573 (1981) (Brennan, J. dissenting.)
 
 
 13
 The Court has stated: "Although no precise rule determines when property has been taken, see Kaiser Aetna v. United States, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979), the question necessarily requires a weighing of private and public interests." Agins v. Tiburon, 447 U.S. 255, 260-61, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980). General equitable principles are relevant to the determination of when a taking occurs. United States v. Fuller, 409 U.S. 488, 490, 93 S.Ct. 801, 803, 35 L.Ed.2d 16 (1973). Accord, United States v. 320.0 Acres of Land, 605 F.2d 762, 780 (5th Cir. 1979). See also United States v. 2,175.86 Acres of Land, 520 F.Supp. 75, 79-80 (E.D.Tex.1981).
 
 
 14
 Just compensation under the fifth amendment means the market value of the property at the time of the taking. United States v. Reynolds, 397 U.S. 14, 16-17, 90 S.Ct. 803, 805, 25 L.Ed.2d 12 (1970). See also United States v. 429.59 Acres of Land, 612 F.2d 459, 462, 464-65 (9th Cir. 1980). Where taking precedes payment, the condemnor must compensate the landowner for the loss of use of either the property or money between the taking and payment. United States v. 429.59 Acres of Land, supra, 612 F.2d at 464-65. Interest is a substitute for the cumbersome process of computing appreciation of the property during that period. Fibreboard Paper Products Corp. v. United States, supra, 355 F.2d at 754 (quoting Seaboard Air Line Railway v. United States, 261 U.S. 299, 304-06, 43 S.Ct. 354, 355-356, 67 L.Ed. 664 (1923)).
 
 
 15
 The great advantage to the government of proceeding under 40 U.S.C. § 257 is that it can obtain a judicial valuation of the property without committing itself to condemn it. United States v. Danforth, supra, 308 U.S. at 284, 60 S.Ct. at 236. See also United States v. 341.45 Acres of Land, 633 F.2d 108, 113 (8th Cir. 1980), cert. denied, 451 U.S. 937, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981). This flexibility must be harmonized with the just compensation requirement.
 
 
 16
 In cases like this one involving vacant, unimproved land, a condemnation judgment forces the landowner to hold property which generates liabilities but no benefits, perhaps excepting recreational benefits not present here. Absent recreational benefits, the judgment effectively takes the condemnee's land by denying any economically viable use. No one would buy land which the government could take at an already settled price. No landowner would build on land which the government could take for the price of the land before it had been improved. State v. Nordstrom, 54 N.J. 50, 253 A.2d 163, 166 (1969), quoted in Stewart & Grindle, Inc. v. State, 524 P.2d 1242, 1247 (Alaska 1974). See also Richmond Elks Hall Ass'n v. Richmond Redevelopment Agency, 561 F.2d 1327, 1330-31 (9th Cir. 1977); Thomas W. Garland, Inc. v. City of St. Louis, 596 F.2d 784, 787 (8th Cir.), cert. denied, 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979). Where the property is income-producing, the condemnation judgment is not a taking, because it does not render the property economically nonviable. See United States v. Mahowald, 209 F.2d 751, 754 (8th Cir. 1954).
 
 
 17
 A condemnation judgment also informs the government how much the property will cost. The government can prevent accrual of interest by depositing the amount of the judgment into court. After judgment, the government cannot dismiss the action without leave of the court. Fed.R.Civ.P. 71A(i)(3). Thus, the possibility that the government may take the condemnee's property has become a definitely asserted purpose and steps have been taken to carry out that purpose. This has been held to constitute a taking. Gerlach Livestock Co. v. United States, 76 F.Supp. 87, 97, 111 Ct.Cl. 1 (1948), aff'd, 339 U.S. 725, 70 S.Ct. 955, 94 L.Ed. 1231 (1950). Accord, United States v. 2,175.86 Acres of Land, supra, 520 F.Supp. at 79; United States v. 97.19 Acres, 511 F.Supp. 565, 567 (D.Md.1981); United States v. 59.29 Acres of Land, 495 F.Supp. 212, 215 (E.D.Tex.1980). Making the date of judgment the date of taking in this situation encourages the government to act promptly once a judgment is issued, since interest begins to accrue at that time. Brown v. United States, 263 U.S. 78, 86, 44 S.Ct. 92, 95, 68 L.Ed. 171 (1923). See also Stewart & Grindle, Inc. v. State, supra, 524 P.2d at 1248; Orono-Veazie Water District v. Penobscot County Water Co., 348 A.2d 249, 258-59 (Me.1975); State v. Nordstrom, supra, 253 A.2d at 167; Cal.Civ.Proc.Code § 1249; Uniform Eminent Domain Code § 1202.
 
 
 18
 Post-judgment delay is unlike pre-condemnation delay. Absent extraordinary delay, there is no taking where the landowner's ability to sell property is limited during the pendency of condemnation proceedings, since the landowner is free to sell the property when the proceedings end. Agins v. Tiburon, supra, 447 U.S. at 263 n.9, 100 S.Ct. at 2142 (quoting Danforth, supra, and citing Thomas W. Garland, Inc., supra, with approval). See also Hernandez v. City of Lafayette, 643 F.2d 1188, 1200-01 (5th Cir. 1981). Pre-condemnation delay permits the condemnor to decide whether it wants to condemn. Post-condemnation delay occurs after the government has been given time to decide, and after it knows the price of the land. Though the proceedings have ended, the landowner is not free to sell or develop until the government acts. The cloud on title created by a judgment permitting a taking at a set price is much greater than that created by the mere possibility that the government may condemn.
 
 
 19
 Because the condemnation judgment denied the landowners any economically viable use of their land, we hold that the government "took" the land at that date. An award of interest from that date is therefore appropriate. Accordingly, the judgment appealed from is REVERSED and REMANDED.
 
 WALLACE, Circuit Judge, dissenting:
 
 20
 The majority has decided that when the government proceeds under the general condemnation statute, 40 U.S.C. § 257, a distinction must be made, for purposes of determining when a taking occurs, between improved property and unimproved property. In the case of unimproved property, the majority rejects the long-standing rule that absent a taking by physical possession or by statutory provision, no taking occurs until payment of the condemnation award. Danforth v. United States, 308 U.S. 271, 284, 60 S.Ct. 231, 236, 84 L.Ed. 240 (1939); United States v. Johns, 146 F.2d 92 (9th Cir. 1944); United States v. Mahowald, 209 F.2d 751 (8th Cir. 1954). The majority holds that in the case of unimproved property, the entry of the condemnation judgment itself effectively "takes" the owner's property by denying him any practical economic use of his land. The obvious purpose of this new rule is to reduce the financial burden on unimproved property owners which occurs when the government waits a period of time after the entry of a condemnation judgment before deciding whether to proceed with the condemnation. As I see it, the effect of a condemnation judgment on the unimproved property owner is not sufficiently different from that on the improved property owner to justify a departure from the general rule that the taking occurs upon the payment of a condemnation award. Therefore, I respectfully dissent.
 
 
 21
 The majority assumes that the unimproved property owner is necessarily in a far worse position than the improved property owner upon the entry of a condemnation judgment. There are, of course, some differences but they appear to me to be differences in degree, not in kind, and not of the magnitude to require the distinction. For example, after the condemnation judgment is entered, the unimproved property owner cannot, as a practical matter, sell his land or make substantial improvements upon it. Ante at 339-340. However, the condemnation judgment has exactly the same effect upon the owner of improved property; the fact that property is income-producing or has improvements upon it which can be utilized by the owner does not change the fact that when the government can take the property at an already settled price, there is little incentive to make improvements and little hope of finding an interested buyer. Thus, the only difference can be that during the period of time in which the government decides whether to finalize the condemnation of the property, the improved property may be contributing to costs if it is income-producing, or may be used by the owner in some way. Aside from possible recreational use, or some other use of the land that does not require capital expenditures which would be lost upon condemnation, the unimproved property owner is forced to carry the property's liabilities until the government decides what action it will take.
 
 
 22
 In deciding whether such a difference is great enough to rise to the level of a constitutional taking, however, it must be emphasized that this is exactly the same position that the unimproved property owner was in prior to the entry of the condemnation judgment. The unimproved property owner cannot claim that the government's actions have permanently removed the opportunity to sell or develop the property. If he holds the land for investment, his return may be delayed. If he plans to improve during the time of delay, there will be an interference. However, as to delay of sale, the improved property owner is similarly delayed, and it is mere speculation to assume that his present return on investment or the imputed return from the use of the property adequately compensates him for this delay. As to temporary interference with the owner's ability to develop his property, the improved property owner may suffer a similar deprivation if there are plans to develop further the property which must now be held up until the government makes its decision.
 
 
 23
 Thus, close examination of the effects of the condemnation judgment on the two types of property demonstrates no real certainty that there is any practical economic result which is substantially different. Neither type of property is made permanently nonsalable or nondevelopable. Both types of landowners are forced to postpone whatever development plans may exist. If the government ultimately condemns the property, both owners have "lost" the income or return which could have been earned from investing the condemnation award. The reason that the unimproved property owner, unlike the improved property owner, cannot offset any losses caused by the government's delay is that, prior to the condemnation judgment, it had obviously not been economically feasible to make similar improvements upon the land. Just as the Supreme Court has held that, absent extraordinary delay, "(m)ere fluctuations in value" resulting from precondemnation activities constitute "incidents of ownership" and "cannot be considered as a 'taking' in the constitutional sense," Agins v. City of Tiburon, 447 U.S. 255, 263 n.9, 100 S.Ct. 2138, 2142, 65 L.Ed.2d 106 (1980), any increased burden on the unimproved property owner caused by postcondemnation delay is best viewed simply as one of the incidents of ownership of unimproved property. This temporary and partial interference is fundamentally different from the kinds of substantial deprivations which have heretofore been recognized as constitutional "takings." See, e.g., Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922); Kaiser Aetna v. United States, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979); Richmond Elks Hall Ass'n v. Richmond Redevelopment Agency, 561 F.2d 1327 (9th Cir. 1977). If relief is to be provided for unimproved property owners, therefore, it must come from Congress rather than the federal courts. I would affirm the judgment of the district court and deny the award of interest from the date of judgment.
 
 
 
 *
 David V. Kenyon, United States District Judge for the Central District of California, sitting by designation