**UNITED STATES of America,**
**Plaintiff-Appellant/Cross-Appellee,**

**v.**

**15.65 ACRES OF LAND in the COUNTY OF MARIN, STATE OF CALIFORNIA; Marin Ridgeland Company, a joint venture comprised of O.D.C. of California, Inc., a corporation; and J. H. Scheuer, a.k.a. James H. Scheuer; Housing Authority of the County of Marin; Redevelopment Agency of the County of Marin; County of Marin; and Unknown Owners, Defendants-Appellees/Cross-Appellants.**

**Nos. 81–4062, 81–4101.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1982.

Decided May 25, 1982.

As Amended on Denial of Rehearing and Rehearing En Banc Sept. 10, 1982.

owned a 164.03 acre tract, which they were developing for residential use. Their neighbors, Glass and Fitzsimmons, also intended to develop their lands. A condition to the latter developments was the dedication to public use of a road, which would provide southern access to the Company's property (*see* diagram, Appendix A). Optimal development of the Company's land depended upon such access.

In 1977, the government instituted contemporaneous condemnation actions against Glass, Fitzsimmons and the Company to acquire land for the Golden Gate National Recreation Area (G.G.N.R.A.). The condemnation trial for 15.65 acres of the Company's land began on July 28, 1980. The jury awarded $623,196 in "severance damages." In determining this amount, they were permitted, over objection, to consider the effect of both loss of access and a probable change to a much more restrictive zoning classification. The government contends that neither should have been considered. The Company cross-appeals the denial of its motion for post-judgment interest. Our jurisdiction rests on 28 U.S.C. § 1291. We reverse the judgment with respect to severance damages and remand for further proceedings. We also reverse the denial of the Company's motion regarding interest.

Martin Green, Washington, D. C., argued, for the U. S.; Jacques B. Gelin, Dept. of Justice, Land and Natural Resources Div., Washington, D. C., on brief.

Jess Jackson, Burlingame, Cal., argued, for defendants-appellees/cross-appellants; Burton J. Goldstein, Goldstein, Barceloux & Goldstein, San Francisco, Cal., on brief.

Before CHOY, SNEED, and SCHROEDER, Circuit Judges.

SNEED, Circuit Judge:

James H. Scheuer and Marin Ridgeland (both hereafter designated as the Company)

## I.

### SEVERANCE DAMAGES

Unless there is a taking,[1] the government is not required to compensate a landowner even though its actions affect the value of his land. *United States v. Fuller*, 409 U.S. 488, 492, 93 S.Ct. 801, 804, 35 L.Ed.2d 16 (1973); *Campbell v. United States*, 266 U.S. 368, 371, 45 S.Ct. 115, 116, 69 L.Ed. 328 (1924). When there is a taking, the Fifth Amendment mandates payment of the value of the taken lands. Several rules have been developed for determining the extent to which this value includes so-called severance damages. First, severance damages, consisting of a diminution in value of the remainder resulting from the taking and use of the part of the land, are recoverable. *United States v. Miller*, 317 U.S. 369, 376, 63 S.Ct. 276, 281, 87

1. The parties to this case do not dispute that there has been or will be a taking of some of the Company's property.

L.Ed. 336 (1943); *United States v. 91.90 Acres of Land*, 586 F.2d 79, 86 (8th Cir. 1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979). Second, severance damages do not include any diminution in value arising solely from "the acquisition and use of adjoining lands of others for the same undertaking." *Campbell v. United States*, 266 U.S. at 372, 45 S.Ct. at 117; *see also United States v. 10.0 Acres of Land*, 533 F.2d 1092, 1097 (9th Cir. 1976) (Carter, J., dissenting); *Gibson & Perin Co. v. Cincinnati*, 480 F.2d 936, 944–45 (6th Cir.), *cert. denied*, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973).

Both rules lead to sensible results. A private seller, upon receiving a bid for a portion of his land and responding thereto in a rational manner, will fix his asking price at an amount that will compensate him for any diminution in value of the remainder of his land. The buyer must pay this price if he wishes to acquire the portion he seeks. On the other hand, a private landowner whose property has its value reduced by the acquisition and use of an adjoining neighbor's land by a third party buyer ordinarily cannot recoup this loss from either the neighbor or the third party buyer. Only the imposition of a duty by operation of law can alter this result. In the absence of such a duty, the third party buyer, having no need for any of the injured landowner's property, will pay him nothing, and the neighbor obviously will not be moved to share voluntarily the proceeds of his sale. Under these circumstances the injured landowner has no remedy. The government in condemnation proceedings is subject to the burdens, as well as the benefits, of these economic realities inasmuch as its liability, as the Court in *Campbell* explained, is no broader than that of a private party. 266 U.S. at 372, 45 S.Ct. at 116–117.

█ The application of these rules becomes complex when the injury to the landowner may be said to flow both from the taking and use of but a portion of his property *and* from the use to which the government puts land taken from a third party neighbor. At first blush the problem

appears to be merely that of choosing which of the above two rules should apply. Reflection and case authority suggest, however, that a third rule is required. This rule appears in *United States v. Pope & Talbot, Inc.*, 293 F.2d 822 (9th Cir. 1961), in which payment for reduced accessibility of land *not* taken was permitted when a dam project undertaken by the condemnor government flooded a road which traversed both the government's land and the property taken from the condemnee landowner. In that case we noted the existence of three factors that distinguished it from *Campbell*, the source of the second rule stated above: (1) the land taken from the condemnee landowner was indispensable to the dam project; (2) the land taken constituted a substantial (not inconsequential) part of the tract devoted to the project; and (3) the damages resulting to the land not taken from the use of the land taken were inseparable from those to the same land flowing from the condemnor government's use of its adjoining land in the dam project. 293 F.2d at 825. Thus, three elements, indispensability, substantiality, and inseparability, are necessary to negate the application of *Campbell*.

The necessity of these elements is also quite sensible. The element of indispensability assures that the government is being required to pay no more than a private buyer confronted with the same compulsion. In either event, indispensability affords the landowner the ability to demand payment for the injury to his remaining property, just as he is able to do so under the first rule stated above. Substantiality tends to assure the existence, in fact, of indispensability, and inseparability tends to assure that the injury to the land not taken does not arise from a use independent of the project with respect to which the property taken was indispensable.

█ The Company in this case did not attempt to utilize these elements in its efforts to recover for the decline in value of the land retained attributable to the loss of access and down-zoning. Nor can we conclude from the record that the district

judge considered these elements.[2] The jury charge itself lends support to this conclusion.[3] It may be that these elements nonetheless can be established on remand.

Notwithstanding the necessity of establishing the *Pope & Talbot, Inc.* linkage when compensation is sought for a decline in value attributable in part to the taking of a neighbor's property, the Company in this case would be entitled to compensation for such decline in value in its retained 148.38 acres if it were able to show by a preponderance of the evidence that this decline is *solely* attributable to the taking and use of its 15.65 acres. Obviously any decline attributable to the taking and use of the Glass and Fitzsimmons tracts would not be compensable under this approach. The loss of southern access would not appear to be compensable under this approach;[4] but the state of the record precludes a ready answer with regard to down-zoning.[5] Perhaps the Company can demonstrate that the probability of down-zoning was solely attributable to the taking and use of the 15.65 acres. In any event, on remand it is entitled to try.

For the reasons set forth above we must reverse the judgment below insofar as it awards severance damages in the amount of $623,196, and remand for further proceedings that are in accord with this portion of our opinion.

## II.

### THE CROSS–APPEAL: POST JUDGMENT INTEREST

The Company cross-appeals the denial of its motion for post judgment interest.

Although interest is usually not available on a judgment against the United States absent a statute, *DeLucca v. United States*, 670 F.2d 843 (9th Cir. 1982), the Fifth Amendment makes interest available when a taking precedes payment. *United States v. 174.12 Acres of Land*, 671 F.2d 313 (9th Cir. 1982); *United States v. Johns*, 146 F.2d 92, 93 (9th Cir. 1944). However, condemnees are not entitled to interest before the date of the taking. *Danforth v. United States*, 308 U.S. 271, 286, 60 S.Ct. 231, 237, 84 L.Ed. 240 (1939); *United States v. 156.81 Acres of Land*, 671 F.2d 336 (9th Cir. 1982). The issue before us, therefore, is when, if ever, did a taking occur?

---

**2.** These elements are properly within the district judge's province to consider. It is for the district judge "to decide 'all issues' other than the precise issue of the amount of compensation to be awarded." *United States v. Reynolds*, 397 U.S. 14, 20, 90 S.Ct. 803, 807, 25 L.Ed.2d 12 (1970).

**3.** The relevant portion provides:
"If you find, by a preponderance of the evidence, that there was a reasonable probability that had the Glass and Fitzsimmons property been developed, such access would have been available, you may consider the loss thereof in determining the market value of the remainder. If you do not so find, however, you may not consider the unavailability of such southern access in determining the fair market value of the remainder."
In essence, the charge appears based on the principle that a taking and use of my neighbor's land by the government that diminishes the value of my land entitles me, without any further showing, to compensation under the Fifth Amendment. This is not the law. The required linkage between the Company's 15.65 acres taken by the government and the taking and use of the Glass and Fitzsimmons property consists of the three elements of *Pope & Talbot, Inc.* previously discussed.

**4.** This assumes that it is impossible to determine or separate loss access due to the taking of the 15.65 acres and from that resulting from the taking of Glass and Fitzsimmons lands. If damages are separable, the two general rules can be directly applied to each kind of damages. *See Georgia-Pacific Corp. v. United States*, 640 F.2d 328 (Ct.Cl.1980).

**5.** There were some indications in the record that it was the special view from the ridge which county officials were seeking to protect.
The government contends on appeal that a zoning change cannot be a proper factor to consider when calculating severance damages. We disagree. A probable zoning change would be considered by a private buyer in determining fair market value of the property, and therefore may be considered in a condemnation proceeding. *United States v. 174.12 Acres of Land*, 671 F.2d 313 (9th Cir. 1982); *United States v. 320.0 Acres of Land*, 605 F.2d 762, 819 (5th Cir. 1979).

The trial court held that the government had not yet taken the land because it had neither filed a declaration of taking nor entered into possession. However, there is no simple formula for establishing when property has been taken. *Kaiser Aetna v. United States*, 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979). Rather, deciding when a taking occurs requires an ad hoc inquiry into when " 'justice and fairness' require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons." *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978).

The effect of a condemnation suit on unimproved land held for development is significantly different from its effect on developed property. While a condemnation suit may change the value of improved property somewhat, the owner usually continues to enjoy the beneficial use of his land until a declaration of taking is filed. *See Gould v. United States*, 301 F.2d 557, 559 (D.C.Cir.1962) (no interest where owner received income and retained title and possession). Intervening fluctuations in value are indistinguishable from the usual burdens of ownership and do not constitute a taking. *Agins v. Tiburon*, 447 U.S. 255, 263 n.9, 100 S.Ct. 2138, 2142, 65 L.Ed.2d 106 (1980); *Danforth*, 308 U.S. at 285, 60 S.Ct. at 236–237. Therefore, when the government condemns improved or productive property, neither the stipulated date of valuation, *United States v. Mahowald*, 209 F.2d 751, 754 (8th Cir. 1954), nor the date of judgment, *Danforth*, 308 U.S. at 284, 60 S.Ct. at 236; *Gould*, 301 F.2d at 560, mark the date of a taking.

On the other hand, when the property condemned is intended for development and sale, and remains unimproved, the owner following a condemnation suit frequently loses more than just value; he may be deprived of all economic use of his land. While the action is pending, the land is almost impossible to sell, although that alone is not sufficient to create a taking.

*Agins v. Tiburon*, 447 U.S. 255, 263 n.9, 100 S.Ct. 2138, 2142 n.9, 65 L.Ed.2d 106 (1980). Also, as was pointed out by the majority in *United States v. 156.81 Acres*, 671 F.2d 336 (9th Cir. 1982), no one would improve the property after the date of valuation because the government could acquire it at a pre-improvement price. *Accord State v. Nordstrom*, 54 N.J. 50, 253 A.2d 163, 166 (1969); *Stewart & Grindle, Inc. v. State*, 524 P.2d 1242, 1247 (Alaska 1974). The owner of unimproved land is thus left with the liabilities which follow title but none of the benefits, save the right ultimately to be paid for the taking.

Under these circumstances, we hold it proper to invoke the rule that when the government deprives an owner of all economic use of his land, there has been a taking. *156.81 Acres, supra; see also Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 138 n.36, 98 S.Ct. 2646, 2666 n.36, 57 L.Ed.2d 631 (1978). In this case a virtual ban on development and sale has been imposed that has rendered impossible any economic use of the 15.65 acres. We therefore hold that the land has been taken.

The next question is when did it occur? Under the somewhat unusual circumstances of this case, we find the stipulated date of valuation to be the date. *156.81 Acres, supra*, in which the date of judgment was held to be the date of the taking, does not compel a different result. In that case, valuation was just one month before trial. The landowners were therefore not burdened for long with the development limitations which, together with the sale restriction, rendered the land useless. In contrast, the parties here valued the land as of a date more than one year before the start of the trial and were without use or compensation for a long period of time. Applying a sense of "justice and fairness," *Penn Central Transportation*, 438 U.S. at 124, 98 S.Ct. at 2659, we hold that the landowners are entitled to interest from March 5, 1979, the date of valuation.

██ Nor are we barred from reaching this result by the Company's request for interest only from the date of judgment, December 8, 1980. It would be unfair to adhere to that date in view of our reversal of that portion of the judgment pertaining to severance damages. To postpone the date of taking to a time subsequent to the date our mandate becomes effective would be even more unfair. The date we have selected, March 5, 1979, we believe is a just and fair one.

██ The appropriate rate of interest is an issue of fact. *United States v. 429.59 Acres of Land*, 612 F.2d 459, 464 (9th Cir. 1980); *United States v. Blankinship*, 543 F.2d 1272 (9th Cir. 1976). We therefore remand the case to the district court for a determination of the proper interest rate.

### III.

### CONCLUSION

We reverse and remand this case to the trial court for a determination of the proper amount of severance damages, if any, and the proper rate of interest. In all other respects the judgment, as modified by this opinion, is affirmed.

REVERSED AND REMANDED IN PART; AFFIRMED AND MODIFIED IN PART.

### APPENDIX A

SUBJECT PROPERTY REMAINDER
ACQUISITION
GLASS PROPERTY
FITZSIMMONS PROPERTY