696 F.2d 351
 UNITED STATES of America, Plaintiff-Appellant Cross Appellee,
v.
2,175.86 ACRES OF LAND, MORE OR LESS, SITUATED IN HARDIN AND
JEFFERSON COUNTIES, STATE OF TEXAS, et al., Defendants,
Kirby Forest Industries, Inc., Defendant-Appellee Cross Appellant.
UNITED STATES of America, Plaintiff-Appellant,
v.
13.32 ACRES OF LAND, MORE OR LESS, SITUATE IN JEFFERSON
COUNTY, STATE OF TEXAS, Bob C. Mabry, et al. and
Unknown Owners, Defendants-Appellees.
 Nos. 81-2402, 81-2471.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 24, 1983.
 
 Claire L. McGuire, Dept. of Justice, Lands Div., Edward J. Shawaker, Atty., Washington, D.C., for plaintiff-appellant cross appellee.
 Sheinfeld, Maley & Kay, Robbin Dawson, Joyce Cox, Attys., Houston, Tex., for defendants in No. 81-2402.
 Gilbert T. Adams, Beaumont, Tex., for defendants-appellees in No. 81-2471.
 Appeals from the United States District Court for the Eastern District of Texas.
 Before RUBIN, RANDALL and JOLLY, Circuit Judges.
 RANDALL, Circuit Judge:
 
 
 1
 These two consolidated cases present the question whether the United States is obligated to pay interest on an award in a straight condemnation proceeding, and if it is, from what date the interest should accrue. The first of these cases, United States v. 2,175.86 Acres of Land, also involves a challenge to the sufficiency of the commission's findings concerning the actual award. For the reasons set forth below, we reverse, 520 F.Supp. 75, and remand for proceedings consistent with this opinion.
 
 
 2
 I. FACTUAL AND PROCEDURAL BACKGROUND.
 
 
 3
 On October 11, 1974, Congress established the Big Thicket National Preserve in southeast Texas, and authorized the Secretary of the Interior to acquire the land within the boundaries of the preserve. 16 U.S.C. Sec. 698 (1976). These cases involve the acquisition of 2,175.86 acres of land located in Hardin and Jefferson Counties, Texas, and approximately 13.32 additional acres in Jefferson County, Texas.
 
 
 4
 The larger tract was owned by Kirby Forest Industries. On August 21, 1978, the United States filed a complaint in condemnation seeking to condemn the Kirby tract. The action was referred to a commission appointed pursuant to Fed.R.Civ.P. 71A. The trial was held in March of 1979. On March 3, 1980, the commission entered its report recommending an award of $2,331,202.00. Both the United States and Kirby filed objections to the commission's report in April, 1980. The district court held a hearing to consider these objections in January, 1981, and entered a judgment on August 13, 1981, awarding Kirby the amount proposed by the commission plus interest at the rate of six percent from August 21, 1978 (the date the complaint was filed), until the date of deposit of the award. The United States filed a notice of appeal on October 8, 1981, and Kirby filed its notice on the 9th. Payment was made on March 26, 1982.
 
 
 5
 At the opening of the trial before the commission, the parties stipulated that "today is the date of taking" so that the trial date could serve as the date on which market value could be determined. Both sides presented expert testimony concerning the highest and best use of the property and the physical description of the land.
 
 
 6
 The United States filed a second complaint in condemnation to obtain the smaller tract owned by Bob C. Mabry and his associates. The landowners filed an answer, demanding an award of just compensation, expenses, attorneys' fees and interest on the award. As in the first case, the action was tried before a commission. On January 24, 1980, the district court entered judgment in the amount of $94,998.24, as recommended by the commission. The judgment was vacated in February, 1980, and an amended judgment entered on April 3, 1980, which reserved for consideration the landowners' request for attorneys' fees, expenses and interest. On April 17, 1980, the government deposited the full amount of the award with the court. On September 28, 1981, the court denied the landowners' claim for expenses, but granted interest on the award at the rate of six percent from the date the complaint in condemnation was filed. Upon a motion of the landowners filed on October 9, 1981, the court amended its judgment to allow interest at the rate of nine percent, as provided by state law. The United States filed two notices of appeal.
 
 
 7
 II. INTEREST FROM THE TIME OF TAKING.
 
 
 8
 The government may appropriate property for public use in a number of ways: by physical occupation, United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945); by the bringing of condemnation cases as in the present case, United States v. Bodcaw Co., 440 U.S. 202, 99 S.Ct. 1066, 59 L.Ed.2d 257 (1979) (per curiam); or by vesting in the government immediate title to the property through legislative action. Miller v. United States, 209 Ct.Cl. 135, 531 F.2d 510 (1976). When the government proceeds by condemnation, it generally employs one of two methods: (1) a declaration of taking or (2) "straight condemnation." Under the Declaration of Taking Act, 40 U.S.C. Sec. 258a (1976), the government obtains title to the land immediately upon filing a declaration of taking and depositing the estimated amount of just compensation with the court. If just compensation as judicially determined is greater than the deposit, the government must deposit the difference with interest from the date of taking.[1]
 
 
 9
 In the cases before us, the government employed the "straight condemnation" method by filing a complaint in condemnation pursuant to 40 U.S.C. Sec. 257 (1976). Unlike section 258a, section 257 does not state that title shall vest immediately in the United States once the action is commenced. The question before us is when the government proceeds by straight condemnation, what is the date of taking.
 
 
 10
 We note at the outset that both parties agree, as indeed they must, that where there is a delay between the time of taking and the time of payment, the landowner is entitled to interest as a part of just compensation. This entitlement is constitutionally mandated by the fifth amendment for just compensation "is the full and perfect equivalent of the property taken." Seaboard Airline Railway Co. v. United States, 261 U.S. 299, 304, 43 S.Ct. 354, 355, 67 L.Ed. 664 (1923). This rule "rests on equitable principles and it means substantially that the owner shall be put in as good a position pecuniarily as he would have been if his property had not been taken." Id.; see also United States v. Rogers, 255 U.S. 163, 41 S.Ct. 281, 65 L.Ed. 566 (1921). Where a taking precedes payment, the landowner "is entitled to such addition as will produce the full equivalent of that value paid contemporaneously with the taking. Interest at a proper rate is a good measure by which to ascertain the amount so to be added." Seaboard, 261 U.S. at 306, 43 S.Ct. at 356. We must turn then to the question of when the takings occurred in these cases.
 
 
 11
 The district court awarded interest from the date the complaints were filed until the time that payment was made, reasoning that the commencement of condemnation proceedings "effectively denied [the landowners] economically viable use and enjoyment of [their] property ...." Record at 573. Mabry would have us adopt the date the Big Thicket National Preserve was established by statute as the date of taking, on the ground that the statute represented the government's commitment to the project. In essence, he maintains that the statute was actually a legislative taking. Kirby concedes that it can find no support for the district court's position; it argues instead that the date of taking was the date of trial. The government contends, relying on Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240 (1939), that a taking did not occur until the date of payment, in which case no interest was due. We agree with the government that no interest was due in these cases.
 
 
 12
 Mabry's argument is easily disposed of. The legislative history of 16 U.S.C. Sec. 698 indicates that Congress did not intend the statute to be a legislative taking; in fact, the Senate committee specifically deleted the legislative taking provision because it felt that "legislative taking is an extraordinary measure which should be invoked only in those instances in which the qualities which render an area suitable for national park status are imminently threatened with destruction. The Committee does not believe that the Big Thicket area represents such an instance." S.Rep. No. 875, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 5554, 5558.[2]
 
 
 13
 In Danforth, the Supreme Court held that the mere enactment of legislation which authorizes condemnation could not be a taking, because "[s]uch legislation may be repealed or modified, or appropriations may fail." 308 U.S. at 286, 60 S.Ct. at 237 (footnote omitted). The Court went on to hold that for an action to constitute a taking, "it must result in an appropriation of the property to the uses of the Government." Id. (footnote omitted). No such appropriation occurred through the enactment of 16 U.S.C. Sec. 698. Mabry has not demonstrated that the enactment of the statute interfered with his enjoyment of his property or his present expectations for its use. See Agins v. Tiberon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); Penn Central Transportation Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). The property was purchased as an investment, and it has remained in the same condition throughout the condemnation proceedings. Accordingly, we hold that the enactment of the statute establishing the preserve was not a taking within the confines of the fifth amendment.
 
 
 14
 Similarly, the mere commencement of straight condemnation proceedings, where the government does not enter into possession during those proceedings, does not constitute a taking. Agins, supra, 447 U.S. at 255 n. 9, 100 S.Ct. at 2138 n. 9, 65 L.Ed.2d at 106 n. 9; see also United States v. 156.81 Acres of Land, 671 F.2d 336 (9th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 569, 74 L.Ed.2d ---- (1982). The Supreme Court held in Agins:
 
 
 15
 Even if the appellants' ability to sell their property was limited during the pendency of the condemnation proceeding, the appellants were free to sell or develop their property when the proceedings ended. Mere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are "incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense."
 
 
 16
 447 U.S. at 255 n. 9, 100 S.Ct. at 2138 n. 9, 65 L.Ed.2d 106 n. 9 (citing Danforth, supra, 380 U.S. at 285, 60 S.Ct. at 236). The government did not enter into actual possession of Kirby's or Mabry's properties prior to payment, and indeed it apparently has yet to take possession of the properties. The district court recognized that the diminution of property value standing alone would not constitute a taking, Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed.2d 303 (1926); but it speculated that the government would not "permit the cutting of even one tree when the purpose of these proceedings is to preserve the land in question for public use as a wilderness park." Record at 573. Kirby conceded at oral argument, however, that while it and other landowners had voluntarily agreed, long before the commencement of these proceedings, not to cut timber on the land within the preserve, it was under no orders from the government not to reinstate logging operations. Since there has been no showing made that the filing of the complaint deprived the landowners of the use of their property so as to constitute a taking, the district court's award of interest from the date of filing must be reversed.
 
 
 17
 In Danforth, the United States condemned the landowner's property pursuant to the Flood Control Act of May 15, 1928, 33 U.S.C. Secs. 702a-702m (1976). As in the cases before us, the government proceeded by petitioning for condemnation without entering into prior possession. The Supreme Court held that under those circumstances, where there had been no previous taking "in actuality or by a statutory provision, which fixes the time of taking by an event ...," that "the taking in a condemnation suit under this statute [took] place upon the payment of the money award by the condemnor," and that no interest was due on the award. 308 U.S. at 284, 60 S.Ct. at 236 (footnotes omitted). The Court reasoned:
 
 
 18
 Until taking, the condemnor may discontinue or abandon his effort. The determination of the award is an offer subject to acceptance by the condemnor and thus gives to the user of the sovereign power of eminent domain an opportunity to determine whether the valuations leave the cost of completion within his resources. Condemnation is a means by which the sovereign may find out what any piece of property will cost. "The owner is protected by the rule that title does not pass until compensation has been ascertained and paid, ..." A reduction or increase in the value of property may occur by reason of legislation for or the beginning or completion of a project. Such changes in value are incidents of ownership. They cannot be considered as a "taking" in the constitutional sense.
 
 
 19
 Id. at 284-85, 60 S.Ct. at 236 (footnotes omitted).
 
 
 20
 In arguing that the date of taking was the date of trial, Kirby maintains that Danforth only applies to takings under the Flood Control Act. Other circuits have not so limited Danforth, see United States v. Gould, 112 U.S.App.D.C. 233, 301 F.2d 557 (1962); United States v. Mahowald, 209 F.2d 751 (8th Cir.1954); United States v. Johns, 146 F.2d 92 (9th Cir.1944), and we do not believe such a limitation is appropriate. While the Court specifically discussed a taking under the Flood Control Act, the broad language of the case, as well as its reasoning, is equally applicable here. The Court in Danforth adopted the date of payment as the time of taking specifically because the Flood Control Act did not prescribe a statutory date, as is the case under 40 U.S.C. Sec. 257. The Supreme Court held in Danforth that a taking did not occur until payment was made where the government proceeded by a petition for condemnation, because title did not pass to the government until the landowner had received compensation. Contrary to the statement made by a district court in another case involving the Big Thicket National Preserve, United States v. 59.29 Acres of Land, 495 F.Supp. 212, 215 (E.D.Tex.1980) (awarding interest from the date of the filing of the commission's report), the government's commitment to the project does not ripen from "conjecture" to "certainty," at the time of the hearing. Danforth holds that a taking does not occur until payment is made, because the government may back out of the project up until the date of payment. Just as in Danforth, the government could have decided not to acquire Kirby's and Mabry's lands until it had paid for them and obtained title. Further, as in Danforth, the government has not yet appropriated the landowners' property to the uses of the government. In fact, Danforth had suffered more injury than the landowners here, since his land had already been flooded as a result of the government's flood control operations.
 
 
 21
 Kirby's next contention is that Danforth does not apply because the parties stipulated that the date of trial was the date of taking. The government maintains that this stipulation was entered into solely for the purpose of establishing a valuation date. Our review of the proceedings indicates that this was in fact the case. As the Eighth Circuit noted in Mahowald, 209 F.2d at 754, the stipulation did not deprive the owners of the enjoyment of their lands, nor did it give the government any interest in those lands. The stipulation did no more than establish a date from which the value of the property could be determined.
 
 
 22
 The landowners maintain that it would be unjust to deny them interest where the valuation date is different from the date of payment, because the value of their property may have risen in the interim. The fifth amendment requires compensation for the value of the property on the date of taking. United States v. Reynolds, 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970). The landowners contend that interest is a convenient method of assuring adequate compensation where property values may have risen during the delay between the valuation date and payment. See Fibreboard Paper Products Corp. v. United States, 355 F.2d 752 (9th Cir.1966) (awarding interest for the delay between the time of taking and payment). The landowners have made no showing that property values have in fact risen, and we see no reason to award interest on the basis of speculation about rising property values.
 
 
 23
 Finally, the landowners urge us to follow the Ninth Circuit's decision in United States v. 156.81 Acres of Land, 671 F.2d 336 (9th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 569, 74 L.Ed.2d ---- (1982). The Ninth Circuit held in 156.81 Acres of Land that interest should accrue from the date of judgment until the date of payment where the condemned property was unimproved. The court reasoned:
 
 
 24
 In cases like this one involving vacant, unimproved land, a condemnation judgment forces the landowner to hold property which generates liabilities but no benefits, perhaps excepting recreational benefits not present here. Absent recreational benefits, the judgment effectively takes the condemnee's land by denying any economically viable use. No one would buy land which the government could take at an already settled price. No landowner would build on land which the government could take for the price of the land before it had been improved. Where the property is income-producing, the condemnation judgment is not a taking, because it does not render the property economically nonviable.
 
 
 25
 671 F.2d at 339-40 (citations omitted). We are unpersuaded by the Ninth Circuit's distinction between improved and unimproved property. Whether or not the property is improved, the judgment in condemnation does not deprive the landowner of a present use. The rented property continues to provide rent; the wilderness property continues to provide recreational uses.
 
 
 26
 The Ninth Circuit noted further that "[m]aking the date of judgment the date of taking in this situation encourages the government to act promptly once a judgment is issued, since interest begins to accrue at that time." 671 F.2d at 340. The Ninth Circuit viewed the judgment as a finalization of the proceedings, in that it informs the government of the cost of acquiring the property so as to enable it to determine whether it can afford the acquisition and it further limits the landowner's ability to dispose of his property. See also United States v. 59.29 Acres of Land, supra. We need not decide today whether there might be circumstances under which the delay between judgment and payment would warrant an award of interest as part of the award of just compensation. The dates of judgment and payment in these cases were relatively contemporaneous and, as mentioned above, there is no evidence in these cases of a rise in value for the properties between the two dates, which might make the earlier valuation date unjust. In Mabry's case, payment was made two weeks after the amended judgment was entered, and in Kirby's it was made eight months after judgment.[3]
 
 
 27
 We hold, on the authority of Danforth, supra, that under the circumstances of this case, where (1) the government has proceeded by the straight condemnation method, and (2) the government has not entered into actual possession or substantially interfered with the landowners' rights in their property prior to payment, the date of taking is the date of payment. It is on this date that title actually passes to the government. Therefore, there was no interest due as part of the award of just compensation to the landowners.
 
 
 28
 III. THE SUFFICIENCY OF THE COMMISSION'S FINDINGS.
 
 
 29
 Both parties in the Kirby case have challenged the sufficiency of the commission's report and findings. The district court accepted the commission's report and recommendations, ruling that the commission's findings were not clearly erroneous.
 
 
 30
 While the clearly erroneous standard of review applies to the commission's findings, Fed.R.Civ.P. 71A, conclusory findings alone are not sufficient. United States v. Merz, 376 U.S. 192, 198, 84 S.Ct. 639, 643, 11 L.Ed.2d 629 (1964). The Supreme Court stated in Merz that "conclusory findings as made in these cases are normally not reviewable by that standard, even when the district court reads the record, for it will have no way of knowing what path the commissioners took through the maze of conflicting evidence." Id. In United States v. Trout, 386 F.2d 216, 224 (5th Cir.1967), we held that Merz required the commission to give reasons for its conclusions to enable the reviewing court to determine the reasoning process underlying the commission's decision. More recently, we held that "[t]he paths followed by the commission in reaching the amount of the award shall be distinctly marked, ... if not blazed with an array of findings of subsidiary facts that demonstrate that the ultimate finding is soundly and legally based." Georgia Power Co. v. 138.30 Acres of Land, 596 F.2d 644, 649 (5th Cir.1979), vacated and remanded on other grounds, 617 F.2d 1112 (5th Cir.1980) (en banc), cert. denied, 450 U.S. 936, 101 S.Ct. 1403, 67 L.Ed.2d 372 (1981) (citation omitted).
 
 
 31
 We agree with the parties in this case that the commission's report is inadequate and that the case must be remanded for further findings. The parties have cited numerous examples where the report could use further elaboration. For example, the government points out that there is no acreage breakdown for the various uses of the property, although some of the uses are incompatible. Further, the report inadequately discusses the testimony of the landowner's appraiser, Willard Hall. The United States moved to strike that testimony, on the ground that Hall had failed to reduce his valuation testimony to reflect what Kirby conceded to be an error in the computation of timber value. The government claimed a number of other errors in Hall's valuation of the timber, as well as in his estimate of highest and best use. Kirby also asserts inadequacies in the report and contends further that the commission should have added on value for the unique nature of the property.
 
 
 32
 The parties have asked us to rule on a number of the issues that were not addressed adequately below, specifically whether Hall's testimony should have been stricken and whether the commission should have considered the unique qualities of the property. We decline to give what would be in effect an advisory opinion. Rather, we remand the case to the district court for a determination of the various issues raised by the parties, with instructions to follow the guidelines established by Merz and its progeny.
 
 
 33
 IV. CONCLUSION.
 
 
 34
 We hold (1) that the landowners were not entitled to interest as part of the award of just compensation; and (2) that the commission's report in the Kirby case was inadequate and the case should be remanded for further proceedings consistent with this opinion.
 
 
 35
 REVERSED in part and REMANDED.
 
 
 36
 JOLLY, Circuit Judge, concurring in part and dissenting in part:
 
 
 37
 Judge Randall has written her usual fine opinion.
 
 
 38
 Quite aside from the quality of her opinion, however, because of the different way I look at this case, I can concur only with that part of the majority's opinion which holds that the commission's report in the Kirby case was inadequate and remands that case for further proceedings. Merz requires this result where the commission's report fails to follow certain guidelines. However, I strongly suspect that the result will not be much different than the one we are here presented and as a practical matter compliance with this remand will be a waste of time and money. Our remanding this case will, for sure, do nothing to assure those who worry about the various burdens of protracted litigation; but it was brought on, indeed required, by the inadequate work product of the commission.
 
 
 39
 I cannot, however, concur in that part of the majority's opinion which holds that the property owners were not entitled to interest from the date of judgment as part of the award of just compensation. The majority has decided that when the government proceeds under the general condemnation statute, 40 U.S.C. Sec. 257, that no distinction can be made, for purposes of determining when a taking occurs, between unimproved property and improved property. Such a decision does not take into proper account the marked difference in the effect of a condemnation judgment on an owner of unimproved property and, in my opinion, denies him the just compensation to which he is entitled. Therefore, I dissent.
 
 
 40
 In the case of improved property, the condemnation judgment is not a taking, because the property continues to provide economic benefits to the property owner. United States v. Mahowald, 209 F.2d 751, 754 (8th Cir.1954). In the case of unimproved property, however, once a condemnation judgment is entered, the owner is, at least at that point if not before, shackled from making economically viable use of his property. As a practical matter, he cannot sell his land or make improvements upon it. Naturally, a landowner will not improve or build on property which the government could take for the price of land before it had been improved. Of course, no one is going to buy land which the government could take at an already settled price.
 
 
 41
 There is usually no need for the government to delay for months in deciding whether it wishes to buy unimproved property once a price has been established. It is, at a minimum, a terrible inconvenience to the property owner to be left thus suspended. By awarding interest from the date of the judgment, it seems to me that we would encourage the government to act as promptly as the circumstances may permit. At the very least, just compensation will be awarded to the owner who has remained liable for all expenses relating to the property, but who has received no income from it and has been prevented, for all practical purposes, from developing or disposing of it.
 
 
 42
 I find nothing in Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240 (1939), which would require us to hold that the taking occurred at the time of payment. Danforth expressly excepted cases where a taking has occurred before the condemnor pays the property owner, and in my thinking a "taking" has occurred for all practical purposes in this type of case once the judgment has been entered, if not before. In addition, there is no per se rule that no taking occurs until money changes hand or title passes. United States v. Dow, 357 U.S. 17, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958).
 
 
 43
 It is obvious, therefore, that I am more in agreement with the decision of the Ninth Circuit in United States v. 156.81 Acres of Land, 671 F.2d 336 (9th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 569, 74 L.Ed.2d ---- (1982), than with the majority in our case. I would hold that in condemnation cases involving vacant, unimproved land, condemnees are entitled to interest from at least the date of judgment if there is no act on the part of the government occurring before judgment which constitutes a taking.
 
 
 
 [1]
 The government need only pay interest on the deficiency, since the amount on deposit has already been paid. 40 U.S.C. Sec. 258a; see also United States v. Blankinship, 543 F.2d 1272, 1275 (9th Cir.1977)
 
 
 [2]
 Mabry casts aspersions on Congress's decision to delete the legislative taking provision, suggesting that the decision was designed solely to avoid the government's obligation to pay interest. Congress was actually concerned about the possible postponement of the acquisition of previously authorized areas, as well as the problem of paying interest. S.Rep. No. 93-875, supra. We note further that there is nothing in the fifth amendment that prohibits the government from choosing the least costly method of acquiring property as long as the requirements of just compensation are met
 
 
 [3]
 There was a three year delay between the trial and payment in Kirby's case. This delay, however, was not attributable solely to the government. The commission took a year to file its report and then both parties filed objections to the commission's findings