MEKI SOLOMONA, Appellant

v.

GOVERNOR OF AMERICAN SAMOA, AMERICAN SAMOA GOVERNMENT, DEVELOPMENT PLANNING OFFICE, and PRODUCT NOTIFICATION AND REVIEW SYSTEM, Appellees

High Court of American Samoa
Appellate Division

AP No. 22-89

December 14, 1990

Before REES, Associate Justice, FONG*, Acting Associate Justice, KLEINFELD,** Acting Associate Justice, TAUANU'U, Chief Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Appellant, Roy J.D. Hall, Jr.
For Appellee, Virginia L. Gibbons, Assistant Attorney General

This appeal is from the denial by the Project Notification and Review System (PNRS) of appellee American Samoa Government (ASG) of a permit to build a house. The permit was denied on the ground that the house was to be constructed on an illegal landfill within a tidal wetland.

In or around 1985 appellant began filling in an area of the mangrove swamp (pala) at the mouth of the Leafu Stream in Leone. In 1987 he attempted to apply for a Consolidated Land Use Permit to conduct "overpass and fill work." Only a few lines of the multi-page application were filled in, and it was never acted upon by any agency of ASG. It appears that substantial work had already been done on the landfill and the "overpass" (a bridge connecting the filled area with the mainland) by the time of this application.

---

\* Honorable Harold M. Fong, Senior Judge, United States District Court for the District of Hawaii, serving by designation of the Secretary of the Interior.

\*\* Honorable Andrew J. Kleinfeld, District Judge, United States District Court for the District of Alaska, serving by designation of the Secretary of the Interior.

In or around 1988 appellant and his wife offered for registration as their individually owned land a parcel described as "a portion of land 'Siulagi.'" This parcel comprised about .716 acres and appears to have consisted of the landfill within the pala. Although the appellant te ified at the hearing below that several neighboring families had originally objected to his landfill activities, any formal objections were evidently withdrawn and the land was registered on September 13, 1988.

In February of 1989 the appellant applied for a permit to build a two-story house and a septic tank on the filled area.

On April 13, 1989, appellant was notified by the ASG Economic Development Planning Office (DPO) that his application had been denied. The notice of denial stated that the application had been "reviewed and evaluated" by "the Review Agencies of the Project Notification and Review System" (PNRS) and that it was being denied because of a government policy that "[u]nique areas, including wetlands [and] mangrove swamps . . . *shall be protected against significant disruption of their physical, chemical, and biological characteristics and values. Only uses dependent on such areas shall be permitted.*" (Emphasis in original.)

The PNRS is a sort of interdisciplinary consortium of all the ASG agencies which have anything to do with land use. It was created to implement the "coastal management program" established by Executive Orders 03-80 and 07-88, codified as A.S.A.C. §§ 26.0201 et seq. This program, in turn, was issued in response to the enactment of the federal Coastal Zone Management Act of 1972, 16 U.S.C. §§ 1451 et seq. The federal act provides, inter alia, for federal assistance to states and territories "in developing land and water use programs for the coastal zone, including unified policies, criteria, standards, methods, and processes for dealing with land and water use decisions of more than local significance."

The coastal zone regulations define the "coastal zone management area" as including the *entire* island of Tutuila, along with *all* the other islands comprising American Samoa and all coastal waters and submerged lands for a distance of three nautical miles seaward. A.S.A.C. § 26.0207. Consequently, anyone who wishes to undertake any sort of construction anywhere in Tutuila must apply to the DPO for approval or disapproval. The regulations require DPO to grant land use permits only after the applicant has applied for and received the "necessary permits" from "permit-letting agencies" within ASG.

A.S.A.C. § 26.0211. (Depending on the type of construction contemplated, these permit-letting agencies can include the Office of the Governor, the Office of the Attorney General, the Economic Development Planning Office, the Territorial Planning Commission the Zoning Board, the Department of Public Works, the Environmental Quality Commission, the Environmental Protection Agency, the Department of Marine and Wildlife, the Department of Parks and Recreation, and/or the Department of Health.) The regulations further provide that "a . . . permit and project notification and review system shall be instituted." A.S.A.C. § 26.0209.

The PNRS is the system established pursuant to these two sections. Instead of applying to several agencies for approval of various aspects of a proposed project, the applicant applies only to DPO. All of the permit-letting agencies then study the application and send representatives to the PNRS and collectively decide either to approve or to disapprove it. "The goal is to provide 'one-stop shopping' to those needing governmental permission to construct almost anything anywhere in the territory." Decision of the Administrative Appeals Panel in the case of Meki Solomona, September 27, 1989 [hereinafter "Appeals Panel Decision"], at 1.

In 1990, during the pendency of this appeal and after the events and proceedings that gave rise to it, the Fono enacted and the Governor signed the American Samoa Coastal Management Act of 1990, PL No. 21-35, which substantially restated many of the provisions of the regulations discussed above and which also provided that those regulations should remain in force until certain others are promulgated. *See* A.S.C.A. § 24.0506(b).

After the PNRS denied appellant's application to build the house and septic tank, he appealed to an Administrative Appeals Panel. The appeals panel held a hearing at which both the appellant and a representative of the appellee(s) testified. The panel later made a visit to the construction site and then took further evidence from appellant.

On September 27, 1989, the appeals panel affirmed the denial of the land use permit. The panel found that the proposed building site was in "the heart of the pala lagoon mangrove swamp area." Appeals Panel Decision at 9. The panel found that "[t]idal levels and action are clearly evident" and that, were it not for the retaining wall built by the appellant to enclose the filled area, "the area would most likely be inundated by high stream flows and/or high tides." *Id*. at 8-9. *See also*

189

*id.* Appendix #2, Document 1, p. 13 ("Site Plan for Fill Area," apparently submitted by the appellant along with his permit application, showing the entire fill area to be within the lagoon.) The panel correctly observed that tidal lands in American Samoa belong to the government. *Id.* at 15-16.

The panel further concluded that various agencies of the government would have authority (presumably even if the land did not belong to the government) to deny construction permits, water quality permits, and a health permit for the septic tank, and that "the technical and regulatory findings of the PNRS and other agencies in this case are correct." *Id.* at 15-16.

Appellant now petitions for judicial review of these findings in accordance with the Administrative Procedures Act. *See* A.S.C.A. §§ 4.1040-41. He raises two important and complex questions.

First, the appellant contends that the establishment of the PNRS by executive order was unconstitutional in the absence of enabling legislation. He contends that an executive regulation must be designed to execute or enforce laws, not to enact or change them. He further contends that the establishment of the coastal zone management program had the effect of altering the legal rights, duties, and relations of persons, and must therefore be characterized as inherently legislative rather than executive. Appellee ASG responds that the Revised Constitution of American Samoa, Article IV § 6, permits the Governor to issue executive regulations "not in conflict with the . . . laws of American Samoa," whether or not they are designed to execute particular laws. The government further cites a number of territorial statutes pertaining to zoning, health, water quality, environmental protection and so forth, which, it is maintained, would authorize ASG agencies to deny land use permits for any of the reasons the PNRS might do so. Finally, ASG argues that the Fono has "ratified" the coastal zone management rules by the 1990 enactment of the Coastal Zone Management Act, and that such ratification applies retrospectively.

Appellant also maintains that the denial of a land use permit in this case is a "taking" of his property for which ASG must provide just compensation. *See* U.S. Const. Amend. V; Rev. Const. Am. Samoa art. I, § 2. A land use regulation may effect a constitutional taking if it *either* fails to "substantially advance legitimate state interests" *or* "denies an owner economically viable use of his land." *Agins v. Tiburon*, 447 U.S. 255, 260 (1980); *see Nollan v. California Coastal Commission*, 483

U.S. 825, 834 (1987); *United States v. Riverside Bayview Homes*, 474 U.S. 121, 127 (1985). Although the coastal zone management regulations are fairly brimming with legitimate state interests, and although the preservation and/or restoration of the Leone Pala Lagoon area as one of the few remaining natural habitats for the ducks, turtles, fishes, and other creatures mentioned in the decisions below might well justify strict regulation and even prohibition of construction in this area, such regulation might nevertheless effect a taking (and thus require compensation to the landowner) if it effectively prohibited any "economically viable" use of private property. *See Nollan, supra,* 483 U.S. at 834; *Riverside Bayview Homes, supra,* 474 U.S. at 127; *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 316-17 (1987).[1] The statement made by the PNRS in denying appellant's permit strongly suggests, although nothing in the record below absolutely states, that no economically productive private use of this tract will be permitted. Remand for an answer to this question might well be appropriate were it not for our resolution of a threshold question.

No taking of private property has occurred in this case because the land was not private property to begin with. It is well settled that submerged and tidal lands in American Samoa --- those which are permanently or periodically covered by tidal waters --- belong to the territorial government. Prior to 1974 such land belonged to the United States. *Lago v. Mageo,* 4 A.S.R. 287 (1962), *aff'd sub nom. Mageo v. Government,* 4 A.S.R. 874 (1963); *Foster v. Olotoa,* 3 A.S.R. 77 (1953). In 1974 this title was conveyed to the American Samoa Government. Submerged and Tidal Lands Act of 1974, P.L. No. 93-435, codified at 48 U.S.C. § 1705(a).

The conveyance from the United States to the territorial government specifically included "artificially made, filled in, or

---

[1] The Government seems to argue that the requirement of compensation for regulatory takings has been effectively read out of the Constitution by *Keystone Bituminous Coal Association v. DeBenedictis,* 480 U.S. 470 (1987). The holding of that case, to the effect that no taking occurs "when the State merely restrains uses of property that are tantamount to public nuisances," *id.* at 491, must be read together with other recent cases suggesting the survival of a robust regulatory takings doctrine. *See, e.g., Nollan, supra; First English Evangelical Lutheran Church, supra; Kaiser Aetna v. United States,* 444 U.S. 164 (1979). Although the "tantamount to nuisance" exception might well cover the prohibition of a landfill (at least a landfill with a septic tank) even in a privately owned stream, we do not take it to mean that the government will never have to pay compensation for any regulatory taking now that all of American Samoa has been declared a coastal zone.

reclaimed lands which were formerly permanently or periodically covered by tidal waters . . . ." *Id.* Even in the absence of this explicit statutory language, the appellant could not have converted public land into his own private property by unilaterally and artificially changing its character. Nor could he have acquired title by offering the filled land for registration, since the attempted registration was of a class of property legally insusceptible of private ownership. *Foster, supra,* 3 A.S.R. at 79-80, and authorities cited therein; *cf. Faleafine v. Suapilimai,* 7 A.S.R.2d 108, 113 (1988) ("[T]he registration violated the statutes and was null and void.").

Because he does not own the land for which this permit was denied, appellant has no standing to raise the question whether special enabling legislation was necessary to allow the Governor to promulgate the coastal zone management regulations, insofar as they affect the rights of private property owners. The executive branch does have statutory authority to preserve and administer government lands. *See* A.S.C.A. § § 18.0204(a) (parks and recreation department shall inventory all properties belonging to the government and with the Governor's approval determine which are included in the park system), 18.0205 (certain submerged and tidal lands are included within the park system and are subject to the administration of the director of parks and recreation), 18.0208(a) (criminal penalties for injury or damage to property within the park system). The Parks and Recreation Department is one of the review agencies comprising the PNRS, and the record below reflects that the reviewing agencies voted unanimously to deny the application.

Accordingly, the decision of the Administrative Appeals Panel is AFFIRMED.