AGINS ᴇᴛ ᴜx. *v.* CITY OF TIBURON

No. 79–602.   Argued April 15, 1980—Decided June 10, 1980

Pᴏᴡᴇʟʟ, J., delivered the opinion for a unanimous Court.

*Gideon Kanner* argued the cause for appellants. With him on the briefs were *John P. Pollock* and *Reginald G. Hearn.*

*E. Clement Shute, Jr.,* argued the cause *pro hac vice* for appellee. With him on the brief were *Robert I. Conn* and *Gary T. Ragghianti.*\*

---

*Briefs of *amici curiae* urging reversal were filed by *Robert A. Ferris* for the California Forest Protective Association; by *Les J. Weinstein* and *Aaron M. Peck* for the Glendale Federal Savings and Loan Association; by *Howard N. Ellman, Kenneth N. Burns,* and *Michael J. Burke* for Half Moon Bay Properties, Inc.; by *Gus Bauman* for the National Association of Home Builders et al.; by *Ronald A. Zumbrun* and *Thomas E. Hookano* for the Pacific Legal Foundation; and, *pro se,* by *Burton J. Goldstein, M. Reed Hunter, Jess S. Jackson, Jr., Jerrold A. Fadem, Michael M. Berger, Roger M. Sullivan, Richard F. Desmond, Stephen J. Wagner, Gerald B. Hansen,* and *Alfred P. Chasuk* for Mr. Goldstein et al.

Briefs of *amici curiae* urging affirmance were filed by *Solicitor General McCree,* Assistant Attorney General *Moorman,* Deputy Solicitor General *Claiborne, Elinor Hadley Stillman,* and *Jacques B. Gelin* for the United States; by *George Deukmejian,* Attorney General, *N. Gregory Taylor,* Assistant Attorney General, and *Richard C. Jacobs,* Deputy Attorney General, for the State of California; by the Attorneys General and other officials of their respective jurisdictions as follows: *J. D. MacFarlane,* Attorney General of Colorado; *Richard S. Gebelein,* Attorney General of Delaware, and *Regina M. Small,* State Solicitor; *Jim Smith,* Attorney General of Florida, and *Richard Hixson,* Assistant Attorney General; *Wayne Minami,* Attorney General of Hawaii; *William J. Scott,* Attorney General of Illinois, and *George Wolff,* Assistant Attorney General; *William J. Guste, Jr.,* Attorney General of Louisiana, and *Kendall Vick,* Assistant Attorney General; *Richard S. Cohen,* Attorney General of Maine, and *Cabanne Howard,* Assistant Attorney General; *Stephen H. Sachs,* Attorney General of Maryland, and *Paul F. Strain* and *Thomas A. Deming,* Deputy Attorneys General; *Francis X. Bellotti,* Attorney General of Massachusetts, and *Stephen M. Leonard,* Assistant Attorney General; *Robert Abrams,* Attorney General of New York; *William J. Brown,* Attorney General of Ohio, and *Colleen Nissl,* Assistant Attorney General; *James A. Redden,* Attorney General of Oregon, and *Peter S. Herman* and *Mary J. Deits,* Deputy Attorneys General; *M. Jerome Diamond,* Attorney General of Vermont, and *Bensen D. Scotch,* Assistant Attorney General; *Slade Gorton,* Attorney General of Washington, and *Charles B. Roe, Jr.,* Senior

MR. JUSTICE POWELL delivered the opinion of the Court.

The question in this case is whether municipal zoning ordinances took appellants' property without just compensation in violation of the Fifth and Fourteenth Amendments.

## I

After the appellants acquired five acres of unimproved land in the city of Tiburon, Cal., for residential development, the city was required by state law to prepare a general plan governing both land use and the development of open-space land. Cal. Govt. Code Ann. §§ 65302 (a) and (e) (West Supp. 1979); see § 65563. In response, the city adopted two ordinances that modified existing zoning requirements. Tiburon, Cal., Ordinances Nos. 123 N. S. and 124 N. S. (June 28, 1973). The zoning ordinances placed the appellants' property in "RPD-1," a Residential Planned Development and Open Space Zone. RPD-1 property may be devoted to one-family dwellings, accessory buildings, and open-space uses. Density restrictions permit the appellants to build between one and five single-family residences on their 5-acre tract. The appellants never have sought approval for development of their land under the zoning ordinances.[1]

---

Assistant Attorney General; and *Bronson C. La Follette,* Attorney General of Wisconsin, for the State of Colorado et al.; by *John H. Larson* and *Paul T. Hanson* for the County of Los Angeles; by *Robert J. Logan* and *Jeffrey P. Widman* for the City of San Jose et al.; by *Daniel Riesel, Nicholas A. Robinson, Joel H. Sachs, Ross Sandler,* and *Philip Weinberg* for the Committee on Environmental Law of the Association of the Bar of the City of New York; by *David Bonderman* for the Conservation Foundation et al.; and by *Elliott E. Blinderman* for the Federation of Hillside and Canyon Associations, Inc., et al.

Briefs of *amici curiae* were filed by *Timothy B. Flynn* and *A. Thomas Hunt* for the American Planning Association et al.; by *Frank Schnidman* for the National Association of Manufacturers; and by *Louis E. Goebel* and *Guenter S. Cohn* for San Diego Gas & Electric Co.

[1] Shortly after it enacted the ordinances, the city began eminent domain proceedings against the appellants' land. The following year, however, the

The appellants filed a two-part complaint against the city in State Superior Court. The first cause of action sought $2 million in damages for inverse condemnation.[2] The second cause of action requested a declaration that the zoning ordinances were facially unconstitutional. The gravamen of both claims was the appellants' assertion that the city had taken their property without just compensation in violation of the Fifth and Fourteenth Amendments. The complaint alleged that land in Tiburon has greater value than any other suburban property in the State of California. App. 3. The ridgelands that appellants own "possess magnificent views of San Francisco Bay and the scenic surrounding areas [and] have the highest market values of all lands" in Tiburon. *Id.*, at 4. Rezoning of the land "forever prevented [its] development for residential use. . . ." *Id.*, at 5. Therefore, the appellants contended, the city had "completely destroyed the value of [appellants'] property for any purpose or use whatsoever. . . ." *Id.*, at 7.[3]

The city demurred, claiming that the complaint failed to state a cause of action. The Superior Court sustained the demurrer,[4] and the California Supreme Court affirmed. 24 Cal. 3d 266, 598 P. 2d 25 (1979). The State Supreme Court

---

city abandoned those proceedings, and its complaint was dismissed. The appellants were reimbursed for costs incurred in connection with the action.

[2] Inverse condemnation should be distinguished from eminent domain. Eminent domain refers to a legal proceeding in which a government asserts its authority to condemn property. *United States* v. *Clarke*, 445 U. S. 253, 255–258 (1980). Inverse condemnation is "a shorthand description of the manner in which a landowner recovers just compensation for a taking of his property when condemnation proceedings have not been instituted." *Id.*, at 257.

[3] The appellants also contended that the city's aborted attempt to acquire the land through eminent domain had destroyed the use of the land during the pendency of the condemnation proceedings. App. 10.

[4] The State Superior Court granted the appellants leave to amend the cause of action seeking a declaratory judgment, but the appellants did not avail themselves of that opportunity.

first considered the inverse condemnation claim. It held that a landowner who challenges the constitutionality of a zoning ordinance may not "sue in inverse condemnation and thereby transmute an excessive use of the police power into a lawful taking for which compensation in eminent domain must be paid." *Id.*, at 273, 598 P. 2d, at 28. The sole remedies for such a taking, the court concluded, are mandamus and declaratory judgment. Turning therefore to the appellants' claim for declaratory relief, the California Supreme Court held that the zoning ordinances had not deprived the appellants of their property without compensation in violation of the Fifth Amendment.[5]

We noted probable jurisdiction. 444 U. S. 1011 (1980). We now affirm the holding that the zoning ordinances on their face do not take the appellants' property without just compensation.[6]

---

[5] The California Supreme Court also rejected appellants' argument that the institution and abandonment of eminent domain proceedings themselves constituted a taking. The court found that the city had acted reasonably and that general municipal planning decisions do not violate the Fifth Amendment.

[6] The appellants also contend that the state courts erred by sustaining the demurrer despite their uncontroverted allegations that the zoning ordinances would "forever preven[t] . . . development for residential use," *id.*, at 5, and "completely destro[y] the value of [appellant's] property for any purpose or use whatsoever . . . ," *id.*, at 7. The California Supreme Court compared the express terms of the zoning ordinances with the factual allegations of the complaint. The terms of the ordinances permit construction of one to five residences on the appellants' 5-acre tract. The court therefore rejected the contention that the ordinances prevented all use of the land. Under California practice, allegations in a complaint are taken to be true unless "contrary to law or to a fact of which a court may take judicial notice." *Dale* v. *City of Mountain View*, 55 Cal. App. 3d 101, 105, 127 Cal. Rptr. 520, 522 (1976); see *Martinez* v. *Socoma Cos.*, 11 Cal. 3d 394, 399–400, 521 P. 2d 841, 844 (1974). California courts may take judicial notice of municipal ordinances. Cal. Evid. Code Ann. § 452 (b) (West 1966). In this case, the State Supreme Court merely rejected allegations inconsistent with the explicit terms of the ordinance under

## II

The Fifth Amendment guarantees that private property shall not "be taken for public use, without just compensation." The appellants' complaint framed the question as whether a zoning ordinance that prohibits all development of their land effects a taking under the Fifth and Fourteenth Amendments. The California Supreme Court rejected the appellants' characterization of the issue by holding, as a matter of state law, that the terms of the challenged ordinances allow the appellants to construct between one and five residences on their property. The court did not consider whether the zoning ordinances would be unconstitutional if applied to prevent appellants from building five homes. Because the appellants have not submitted a plan for development of their property as the ordinances permit, there is as yet no concrete controversy regarding the application of the specific zoning provisions. See *Socialist Labor Party* v. *Gilligan*, 406 U. S. 583, 588 (1972). See also *Goldwater* v. *Carter*, 444 U. S. 996, 997 (1979) (POWELL, J., concurring). Thus, the only question properly before us is whether the mere enactment of the zoning ordinances constitutes a taking.

The application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests, see *Nectow* v. *Cambridge*, 277 U. S. 183, 188 (1928), or denies an owner economically viable use of his land, see *Penn Central Transp. Co.* v. *New York City*, 438 U. S. 104, 138, n. 36 (1978). The determination that governmental action constitutes a taking is, in essence, a determination that the public at large, rather than a single owner, must bear the burden of an exercise of state power in the public interest. Although no precise rule de-

---

review. The appellants' objection to the State Supreme Court's application of state law does not raise a federal question appropriate for review by this Court. See *Patterson* v. *Colorado ex rel. Attorney General*, 205 U. S. 454, 461 (1907).

termines when property has been taken, see *Kaiser Aetna* v. *United States,* 444 U. S. 164 (1979), the question necessarily requires a weighing of private and public interests. The seminal decision in *Euclid* v. *Ambler Co.,* 272 U. S. 365 (1926), is illustrative. In that case, the landowner challenged the constitutionality of a municipal ordinance that restricted commercial development of his property. Despite alleged diminution in value of the owner's land, the Court held that the zoning laws were facially constitutional. They bore a substantial relationship to the public welfare, and their enactment inflicted no irreparable injury upon the landowner. *Id.,* at 395–397.

In this case, the zoning ordinances substantially advance legitimate governmental goals. The State of California has determined that the development of local open-space plans will discourage the "premature and unnecessary conversion of open-space land to urban uses." Cal. Govt. Code Ann. § 65561 (b) (West. Supp. 1979).[7] The specific zoning regulations at issue are exercises of the city's police power to protect the residents of Tiburon from the ill effects of urbanization.[8] Such governmental purposes long have been recognized as legitimate. See *Penn Central Transp. Co.* v. *New York City, supra,* at 129; *Village of Belle Terre* v.

---

[7] The State also recognizes that the preservation of open space is necessary "for the assurance of the continued availability of land for the production of food and fiber, for the enjoyment of scenic beauty, for recreation and for the use of natural resources." Cal. Govt. Code Ann. § 65561 (a) (West. Supp. 1979); see Tiburon, Cal., Ordinance No. 124 N. S. §§ 1 (f) and (h).

[8] The City Council of Tiburon found that "[i]t is in the public interest to avoid unnecessary conversion of open space land to strictly urban uses, thereby protecting against the resultant adverse impacts, such as air, noise and water pollution, traffic congestion, destruction of scenic beauty, disturbance of the ecology and environment, hazards to geology, fire and flood, and other demonstrated consequences of urban sprawl." *Id.,* § 1 (c).

*Boraas*, 416 U. S. 1, 9 (1974) ; *Euclid* v. *Ambler Co., supra,* at 394–395.

The ordinances place appellants' land in a zone limited to single-family dwellings, accessory buildings, and open-space uses. Construction is not permitted until the builder submits a plan compatible with "adjoining patterns of development and open space." Tiburon, Cal., Ordinance No. 123 N. S. § 2 (F). In passing upon a plan, the city also will consider how well the proposed development would preserve the surrounding environment and whether the density of new construction will be offset by adjoining open spaces. *Ibid.* The zoning ordinances benefit the appellants as well as the public by serving the city's interest in assuring careful and orderly development of residential property with provision for open-space areas. There is no indication that the appellants' 5-acre tract is the only property affected by the ordinances. Appellants therefore will share with other owners the benefits and burdens of the city's exercise of its police power. In assessing the fairness of the zoning ordinances, these benefits must be considered along with any diminution in market value that the appellants might suffer.

Although the ordinances limit development, they neither prevent the best use of appellants' land, see *United States* v. *Causby,* 328 U. S. 256, 262, and n. 7 (1946), nor extinguish a fundamental attribute of ownership, see *Kaiser Aetna* v. *United States, supra,* at 179–180. The appellants have alleged that they wish to develop the land for residential purposes, that the land is the most expensive suburban property in the State, and that the best possible use of the land is residential. App. 3–4. The California Supreme Court has decided, as a matter of state law, that appellants may be permitted to build as many as five houses on their five acres of prime residential property. At this juncture, the appellants are free to pursue their reasonable investment expectations by submitting a development plan to local officials. Thus, it cannot be said that the impact of general land-use regulations has denied

appellants the "justice and fairness" guaranteed by the Fifth and Fourteenth Amendments. See *Penn Central Transp. Co.* v. *New York City,* 438 U. S., at 124.[9]

## III

The State Supreme Court determined that the appellants could not recover damages for inverse condemnation even if the zoning ordinances constituted a taking. The court stated that only mandamus and declaratory judgment are remedies available to such a landowner. Because no taking has occurred, we need not consider whether a State may limit the remedies available to a person whose land has been taken without just compensation.

The judgment of the Supreme Court of California is

*Affirmed.*

---

[9] Appellants also claim that the city's precondemnation activities constitute a taking. See nn. 1, 3, and 5, *supra.* The State Supreme Court correctly rejected the contention that the municipality's good-faith planning activities, which did not result in successful prosecution of an eminent domain claim, so burdened the appellants' enjoyment of their property as to constitute a taking. See also *City of Walnut Creek* v. *Leadership Housing Systems, Inc.,* 73 Cal. App. 3d 611, 620–624, 140 Cal. Rptr. 690, 695–697 (1977). Even if the appellants' ability to sell their property was limited during the pendency of the condemnation proceeding, the appellants were free to sell or develop their property when the proceedings ended. Mere fluctuations in value during the process of governmental decisionmaking, absent extraordinary delay, are "incidents of ownership. They cannot be considered as a 'taking' in the constitutional sense." *Danforth* v. *United States,* 308 U. S. 271, 285 (1939). See *Thomas W. Garland, Inc.* v. *City of St. Louis,* 596 F. 2d 784, 787 (CA8), cert. denied, 444 U. S. 899 (1979); *Reservation Eleven Associates* v. *District of Columbia,* 136 U. S. App. D. C. 311, 315–316, 420 F. 2d 153, 157–158 (1969); *Virgin Islands* v. *50.05 Acres of Land,* 185 F. Supp. 495, 498 (V. I. 1960); 2 J. Sackman & P. Rohan, Nichols' Law of Eminent Domain § 6.13 [3] (3d ed. 1979).