[Civ. No. 21652. Third Dist. Mar. 7, 1983.]

NORTH SACRAMENTO LAND COMPANY,
Plaintiff and Appellant, v.
CITY OF SACRAMENTO, Defendant and Respondent.

**COUNSEL**

Downey, Brand, Seymour & Rohwer, Robert R. Harlan and Thomas N. Cooper for Plaintiff and Appellant.

James P. Jackson, City Attorney, Leliand J. Savage and Diane B. Balter, Deputy City Attorneys, for Defendant and Respondent.

OPINION

**PUGLIA, P. J.**—Plaintiff appeals from a judgment of dismissal entered after the trial court sustained defendant's demurrer to plaintiff's amended complaint without leave to amend. The amended complaint seeks declaratory relief from a city zoning ordinance which eliminates the possibility of most special permit uses for property owned by plaintiff along the American River in Sacramento. Plaintiff alleges the ordinance deprives it of "the entire practical, substantial, viable, beneficial, reasonable, economic, and feasible uses" of the property. The complaint alleges facts which, if proven at trial, entitle plaintiff to relief under *Agins* v. *City of Tiburon* (1979) 24 Cal.3d 266 [157 Cal.Rptr. 372, 598 P.2d 25], affirmed *Agins* v. *Tiburon* (1980) 447 U.S. 255 [65 L.Ed.2d 106, 100 S.Ct. 2138]. Accordingly, we reject the trial court's conclusion that no relief is appropriate as a matter of law and reverse the judgment.

■  We consider all well pled allegations in the complaint admitted for purposes of appeal. (*White* v. *Davis* (1975) 13 Cal.3d 757, 765 [120 Cal.Rptr. 94, 533 P.2d 222].) Plaintiff is the owner of approximately 439 acres of unimproved land on the banks of the American River in the City of Sacramento. The land is subject to a considerable number of easements, rights-of-way, licenses for bicycle trails, and other restrictions; it is not, nor has it ever been, reasonably suitable for agriculture.

Before the challenged ordinance was enacted, plaintiff's land was zoned "F" (floodplain). The only use permitted without a special use permit was general agriculture. At the discretion of the planning commission, however, applications could be granted for special uses such as animal hospitals, boat docks, penal institutions, schools, and sand or gravel pits. Plaintiff alleges its property is particularly suitable for the extraction of sand and gravel. It is conceded that no special use application was ever made or granted for such use of plaintiff's land.

In 1975, a new plan was adopted for the American River area by the city. Pursuant to the plan, the new ordinance changes the zoning designation to "ARP-F" (American River Parkway-Floodplain) and eliminates all special use permits except those for group camping facilities.[1] Agriculture remains the

_____

[1] The new ordinance reads in relevant part:

"Paragraph 24.01 *Establishment—Purpose*. [¶] There is hereby created an ARP-F Zone. Property within the ARP-F Zone constitutes a designated floodway likely to be inundated by a flood having a one per cent (1%) per annum chance of occurrence or greater. The provisions of this division are intended to prevent the loss of life and property by prohibiting the erection of improvements or structures. Furthermore, the provisions of this division are intended to protect the natural features of property within the flood plain of the American River to prevent erosion and siltation and to preserve valuable open space in accordance with the provisions of the General Plan.

"Paragraph 24.02. *Permitted uses*. The only uses permitted in the ARP-F Zone are

basic permitted use of the land.

█ Plaintiff's complaint alleges its land is not reasonably suitable for either agriculture or camping facilities and thus the termination of the previous potential special uses eliminates any possible reasonable use of the land and constitutes unconstitutionally excessive regulation. *Agins, supra,* held that a zoning ordinance may be unconstitutional and subject to invalidation when its effect is to deprive a landowner of substantially all reasonable use of the property. (24 Cal.3d at p. 277.) However, the ordinance there in question belied the claim that development of Agins' land was forever prevented. (*Ibid.*)

The effect of the new ordinance here is not so clear. The former ordinance provided guidelines under which applications for special use permits were to be considered.[2] Under the guidelines, as the city concedes, an application could not be denied arbitrarily. It is theoretically possible therefore that on application by plaintiff the planning commission would have exercised its discretion to permit use of the land for extraction of sand and gravel. Since it is alleged the land is not reasonably suited for any currently permitted use, elimination of this possibility deprived the land of substantially all use and value. (See *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 518 [125 Cal.Rptr. 365, 542 P.2d 237] and *Agins* v. *City of Tiburon, supra,* 24 Cal.3d at p. 277.)

We are aware of no direct authority to the effect that elimination of even the contingent possibility that a special use might be permitted measurably diminishes the value of the land. Neither is there authority for the contrary position and we are not prepared so to hold as a matter of law. Each case must be deter-

---

agricultural uses (except maintaining, keeping, feeding or raising swine) for which no building or structure is erected upon the premises. . . .

"Paragraph 24.04. *Special Permit Use.* In addition to the uses permitted within the ARP-F Zone pursuant to paragraph 24.02, group camping facilities may be permitted subject to the issuance of a special permit. . . ."

[2]The special permits provision of the former ordinance provided: [¶] "SPECIAL PERMITS—QUALIFICATIONS: A Special Permit is a zoning instrument used primarily to review the location, site development, or conduct of certain land uses. These are uses which generally have a distinct impact on the area in which they are located, or are capable of creating special problems for bordering properties unless given special attention. A Special Permit is granted at the discretion of the Planning Commission and is not the automatic right of any applicant. In considering an application for a Special Permit, the following guidelines shall be observed:

"1. *Sound principles of land use*: A Special Permit shall be granted upon sound principles of land use.

"2. *Not injurious*: A Special Permit shall not be granted if it will be detrimental to the public health, safety or welfare, or if it results in the creation of a nuisance.

"3. *Must relate to a plan*: A Special Permit use must comply with the objectives of the general or specific plan for the area in which it is to be located."

The Flood Zone within which plaintiff's property lies is described in the former ordinance as "a special zone which permits agricultural uses and other uses subject to special review and approval. It is also considered an open space zone. It is intended to be applied to areas along the Sacramento and American Rivers and their tributaries, and other areas subject to inundation."

mined on its individual facts (see *Agins, supra,* 24 Cal.3d at p. 277). Plaintiff must have the opportunity to prove that his land is not reasonably suitable for any use permitted by the challenged ordinance, that it is suitable for extraction of sand and gravel, that such potential use, even as affected by the speculative nature of the eventuality that such use might have been permitted, imparted value to the land, and that elimination of that potential special use deprived it of substantially all reasonable use and value. Failing such, it may be concluded the ordinance had no effect on the use or value of plaintiff's land and thus did not involve unconstitutionally excessive regulation by the city. The failure of such proof, however, cannot be postulated on the demurrer.

Because we find plaintiff has stated a cause of action under *Agins, supra,* 24 Cal.3d 266, we do not reach the other contentions raised on appeal.

The judgment is reversed and the cause remanded with directions to the trial court to vacate its order and to enter an order overruling defendant's demurrer.

Regan, J., and Sparks, J., concurred.