MARKEY, Chief Judge,
dissenting.
I respectfully dissent, and would affirm dismissal of the complaint.
Neither enactment of 30 U.S.C. § 1260(b)(5) nor Wyoming’s subsequent permit denial constituted in my view an acquisition by the United States of an interest in coal belonging to Whitney Benefits or to Peter Kiewit Sons’ Co. (Benefits). Section 1260(b)(5) forecloses only the surface mining, i.e. “strip mining”, of coal under an alluvial valley floor west of the one hundreth meridian west. Benefits remains free under the statute to mine its coal by other, less environmentally damaging methods. In my view, Benefits’ expectation of a permit to strip mine does not, in itself and without more, constitute “property” as envisaged in the Fifth Amendment.
A statute regulating the uses of property is reviewed on the basis of whether it denies an owner “economically viable use”. Agins v. Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980); see also Hodel v. Virginia Surface Mining & Reel. Assn., 452 U.S. 264, 295-96, 101 S.Ct. 2352, 2370, 69 L.Ed.2d 1 (1981). Section 1260(b)(5), while prohibiting surface mining, conditionally provides for other methods of mining, thereby permitting “economically viable use”. Thus, the prohibition of the statute is distinguishable from that involved in Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922), in which a state statute forbade any mining of coal that caused the subsidence of any house, thus rendering all means of mining commercially impracticable. Benefits has not alleged that denial of a permit to strip mine deprived it of all opportunity to mine its coal by other methods. Indeed, its complaint nowhere mentions any other method, but simply asserts that the mere passage of the statute constituted a taking on the date of its enactment.
Under § 1260(b)(5), methods which do not “interrupt, discontinue, or preclude farming,” 30 U.S.C. § 1260(b)(5)(A), and which do not “materially damage the quantity or quality of water in surface or underground water systems,” 30 U.S.C. § 1260(b)(5)(B), are expressly excepted from the general prohibition. Thus, if Benefits selected a method meeting those requirements, the statute would not preclude its obtaining a permit. That an alternative permissible method might be less profitable is not determinative. See Penn Central Transp. Co. v. New York City, 438 *1563 U.S. 104, 124-28, 98 S.Ct. 2646, 2659-61, 57 L.Ed.2d 631 (1978). If Benefits should decline to follow statute and regulation, it would be entitled to nothing. See generally 123 CONG.REC. 15,965-66 (May 20, 1977).
Though I would affirm the dismissal, I would not adopt the approach employed by the Claims Court. It held, in essence, that the time for a taking suit, if any, had not yet arrived. It employed a proposition appearing in Hodel, supra, 452 U.S. at 297 n. 40, 101 S.Ct. at 2371 n. 40, in which the Supreme Court said “an alleged taking is not unconstitutional unless just compensation is unavailable.” Accepting Benefits’ allegations as true for the purposes of the Government’s motion to dismiss, the Claims Court held that availability of a fee coal exchange provision under § 1260(b)(5) was material in considering whether “just compensation is unavailable,” and thus in considering whether an unconstitutional taking had in fact occurred. See Penn Central, supra, 438 U.S. at 137, 98 S.Ct. at 2665. Thus, it concluded that the case was not ripe for adjudication because an available administrative remedy, which might potentially yield a dollar-for-dollar “recovery”, had not been exhausted. See Hodel, supra, 452 U.S. at 297, 101 S.Ct. at 2371. In considering the Government’s motion to dismiss, however, the Claims Court was required to accept only Benefits’ fact allegations, not its legal assertions concerning what type of property interest may be judicially recognized as subject to an unconstitutional taking.
The basis for assertion of a taking claim appears in paragraph 9 of the complaint:
9. As a direct result of the passage of SMCRA [§ 1260(b)(5)] and the prohibition of surface coal mining on alluvial valley floors significant to farming, plaintiffs have been deprived of the benefits of ownership and denied economically viable use of the property in question.
The foregoing allegation asserts that a denial of “economically viable use” occurred the moment § 1260(b)(5) was passed. Because that statute forbade only surface mining, it is possible to assume, as the Claims Court was required to assume in considering the motion to dismiss, that Benefits was alleging that surface mining is an economically viable use of the property right in question. That the statute denies that use is clear in the wording of the statute itself. Nowhere, however, does the complaint allege that surface mining is the only economically viable use of the property right, or that other mining methods are impossible, impractical, or not economically viable. Indeed, counsel for plaintiff told the Claims Court: “With respect to this particular piece of property, if it can’t be used to mine coal, it has no other economically viable use.” (emphasis added). My difficulty with the complaint lies precisely here, that it fails to allege facts bringing Benefits within the purview of the statute, a statute that does not say the property in question “can’t be used to mine coal.”
Though all inferences must be drawn in favor of the complainant, it would not seem too much to ask that one relying on a statute that forbids one use and specifically permits others be required to allege facts applicable to the entire statute. In Skaw v. United States, 740 F.2d 932, 939 (Fed.Cir.1984), for example, summary judgment was reversed because the parties had submitted to the trial court three factual issues, one of which was whether plaintiff’s mining claim could be mined by methods other than the placer or dredge mining prohibited by the statute involved in that case.
Because I consider Congress’ removal of the freedom to strip mine as not in itself constituting a judicially cognizable taking, and because Benefits has not alleged facts indicating that strip mining is the only economically viable use, I would dismiss the complaint for failure to state a claim on which relief could be granted.
“[N]ot all economic interests are ‘property rights’; only those economic advantages are ‘rights’ which have the law back of them, and only when they are so recognized may courts compel others to forbear from interfering with them or to compen *1564 sate for their invasion.” United States v. Willow River Power Co., 324 U.S. 499, 502, 65 S.Ct. 761, 764, 89 L.Ed. 1101 (1945). That a taking will not lie under the allegations of this complaint is particularly appropriate where, as here, Congress has conclusively determined the “use” precluded by statute to be destructive of the public health and welfare. 30 U.S.C. § 1201; see also Penn Central, supra, 438 U.S. at 130-31, 98 S.Ct. at 2662; Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915).
Benefits stated before the Claims Court that it would be perfectly happy with a stay order, that it was currently conducting negotiations with the Secretary, and that it had filed its complaint in the Claims Court as a precaution (1) to forestall the effect of a statute of limitations that might run from an early date of any “taking” that might be found to have occurred, and (2) to “light a fire” under the Secretary. It has gained these objectives, and has now filed a “citizen’s suit” in district court to compel exchange of its interests for federal coal. That is as Congress intended the process to work.
The present statute envisages neither condemnation nor land acquisition. That one denied the right to strip mine in a first location may choose to compel the Secretary to grant the right to mine at a second location, and that the Secretary shall receive in exchange the right to mine in the first location, does not constitute a land acquisition or a program designed to acquire mining rights. The exchange provision is consistent with the dual intent of Congress of promoting development of the nation’s coal resources while simultaneously precluding injury to the environment resulting from strip mining. 30 U.S.C. § 1202. The present exchange mechanism is thus one contributing to fairness, see 123 CONG.REC. 15,755 (May 20, 1977), and is not unlike the Transferable Development Rights involved in Penn Central, 438 U.S. at 137, 98 S.Ct. at 2665.
As above indicated, I would dismiss the complaint for failure to state a claim on which relief could be granted, with leave, of course, to amend, if Benefits is able, to assert facts indicating that it cannot economically mine its coal by any methods permitted in § 1260.