**In re William F. GINGERELLA, Debtor.**

**Bankruptcy No. 91–11413.**

United States Bankruptcy Court,
D. Rhode Island.

Dec. 11, 1992.

---

Richard C. Panciera, Westerly, RI, for debtor.

Michael C. Iannotti, Asst. U.S. Atty., Office of the U.S. Atty., Providence, RI.

Theodore Orson, Brown, Rudnick, Freed & Gesmer, Providence, RI, for Washington Trust Co.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on August 20, 1992 on the approval of the Debtor's Disclosure Statement. Although there are no objections to the Disclosure Statement as filed, the Farmers Home Administration (FmHA) and Washington Trust Co., both secured creditors, urge us to also consider the question of Plan confirmability at this juncture.

The Debtor's plan would modify his present financing arrangement with FmHA on 22 units of rental housing, to allow the phased conversion of those units into condominiums, even though the 1983 loan documents provide that the subject property remain "rental" until the year 2003. In response to FmHA's rejection of his proposal, the Debtor argues that FmHA has sufficient programmatic discretion to allow the modification, that development of these units into condominiums makes great economic sense, and is also consistent with a national policy of home ownership for lower income families.

We note initially, that while disclosure statement hearings are typically limited to the adequacy of the information being furnished to creditors, it is appropriate to consider other issues as well at this stage, where the proposed plan is arguably unconfirmable on its face. *See In re Main Road Properties, Inc.*, 144 B.R. 217, 219 (Bankr.D.R.I.1992); *In re Bjolmes Realty Trust*, 134 B.R. 1000, 1002 (Bankr.D.Mass. 1991), *appeal docketed*, No. 92–1417 (1st Cir. Apr. 10, 1992); *In re Eastern Maine Electric Coop., Inc.*, 125 B.R. 329, 333 (Bankr.D.Me.1991).

After hearing arguments, we requested memoranda addressing the right of FmHA borrowers to obtain modifications of loan documents, and took the matter under advisement.

## BACKGROUND

In 1983 the Debtor obtained a Rural Rental Housing Loan through FmHA in the amount of $860,700, to finance the development and construction of 22 units of family rental housing in Westerly, Rhode

Island. The project was completed as proposed, has been operating according to plan since its inception, and the present balance of the loan is approximately $725,000. Schedule A of the mortgage deed to FmHA contains a provision limiting the use of the property to "housing people eligible for occupancy as provided in Section 515 of Title V of the Housing Act of 1949, and FmHA regulations then extant during this 20–year period beginning May 17, 1983...." The project is currently being operated by a consulting and management group, in accordance with FmHA Rural Rental Housing regulations. Although the subject loan has *never* been in default, due to the depressed real estate market the Debtor is having cash flow and other problems with several other real estate holdings and obligations, threatening the loss of this "healthy" property.

The Debtor filed this Chapter 11 case on May 29, 1991, and several months later, on August 8, 1991, he submitted a proposal to FmHA under the agency's Section 502 Demonstration Program, outlining a condominium conversion plan. Section 502 is intended to provide financing for the development and construction of innovative housing units that do not meet existing published standards and regulations. The broad goal of the program is to increase the availability of affordable housing to low income families by developing housing units which incorporate innovative designs and ideas to keep costs low, enhance living standards, and improve living environments. FmHA AN No. 2200 (1944). On October 22, 1991, FmHA rejected the Debtor's proposal, without elaboration, and, also without explanation, indicated that said rejection was not an appealable decision. (See Appendix A)

The Debtor filed his Disclosure Statement and Plan on March 31, 1992. The plan provides, inter alia, for a phased condominium conversion similar to the one earlier rejected by FmHA, and contemplates the use of some of the proceeds generated from the sale of individual condominium units to fund the Plan. The scheduled disclosure hearing was continued, at the request of the parties, to explore the possibility of obtaining an agency equity loan. That request was also turned down by FmHA, notwithstanding the Debtor's *potential* equity in the project,[1] on the ground that such loans are available only for restrictive use projects which had been implemented prior to 1979.

At the July 16 hearing, the Debtor requested a second continuance to solicit purchase agreements from qualified non-profit organizations. Those discussions bore no fruit either, and on August 20, the parties pressed the Court for a ruling on the feasibility of the present Plan. We have been pondering this problem ever since.

## DISCUSSION

■ The Debtor advances four arguments in support of his position.

■ First, the FmHA Director's rejection of the Debtor's proposal does not state the basis for his decision, but arbitrarily rejects the proposal, giving no reasons for reaching that conclusion. The Debtor argues that 42 U.S.C. § 1480 gives the Secretary of Agriculture broad authority to compromise claims and obligations, including the ability to "adjust, [or] modify ... the terms of security instruments, leases, contracts, and agreements entered into or administered by the Secretary ... as circumstances may require...." 42 U.S.C. § 1480(c). This language clearly appears to vest discretion in FmHA to modify agreements, where appropriate.

Second, because the Debtor has significant *potential equity* in the property, he would like to protect that potential asset through the vehicle of an FmHA equity loan. 42 U.S.C. § 1485(c). But here, be-

---

**1.** The Debtor's appraisal of the subject property dated May, 1992 indicates a highest and best use market value of $1,347,500 as 11 duplex homes, or $1,540,000 as 22 condominium units. The Debtor's obligation to FmHA approximates $725,000. We treat that appraisal as evidence in this proceeding which is uncontroverted, and although we do not make a specific finding as to value herein, it is clear that, valued as condominiums, the subject property is worth substantially more than the balance due FmHA.

cause the loan post-dates the 1979 incentive period deadline, FmHA, in standard bureaucratic fashion, summarily denied the availability of such a loan. (See Appendix B) Again, however, the Debtor points to the agency's discretion to modify the contract in a manner that would even benefit FmHA, by increasing its equity cushion, 42 U.S.C. §§ 1472 and 1480, and that because of the undisputed benefit that would accrue to all parties via the enhancement in value as a condominium conversion, FmHA's *arbitrary* refusal to exercise its discretion is an abuse of its statutory and equitable authority. It would seem that in the absence of a clear prohibition against modification of this contract, FmHA is obligated to either: (1) allow the proposed modification, or, at a minimum, (2) state *very compelling* reasons for not doing so.

Third, the Debtor argues that he can successfully "cram down" this Plan, over FmHA's objection, under 11 U.S.C. § 1129(b). We recognize that there is no authority to cram down, where the Plan requires FmHA to act outside of its legislated authority. However, where, as here, the agency does possess the authority to waive or modify its agreements, "as circumstances may require," cram down may well be authorized, provided that the Plan does not discriminate unfairly, and otherwise meets the "fair and equitable" test under § 1129(b)(2).

Finally, the Debtor argues that by refusing to permit conversion, FmHA has run afoul of the Fifth Amendment. It is well established that regulation applied unreasonably may constitute a taking of private property without compensation, U.S. Const. amend. V.; *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922), and recently the Supreme Court has dramatically elevated the standard by which courts should examine into whether regulation goes "too far." *See, e.g., Lucas v. South Carolina Coastal Council,* —— U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); *First English Evangelical Lutheran Church v. County*

*of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). "[T]he Fifth Amendment is violated when land-use regulation 'does not substantially advance legitimate state interests or denies an owner economically viable use of his land.'" *Lucas* at ——, 112 S.Ct. at 2894 (quoting *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980)). In these circumstances there may well be room to find that the Debtor's realizable equity in the property has been effectively denied to him by FmHA's arbitrary refusal to permit conversion, where the regulatory scheme affords the discretion urged upon us by the Debtor, and where said discretion has been unreasonably withheld.

Accordingly, in light of the Debtor's undisputed potential equity in the subject property *as a condominium project;* and considering the representation that this Plan, if approved, would provide a 100% payout to all creditors;[2] and by the general authority granted to this Court under 11 U.S.C. § 105, FmHA is ORDERED TO SHOW CAUSE in writing, on or before January 8, 1993, why it should not exercise the regulatory discretion necessary to allow the requested conversion. The Debtor has ten (10) days within which to respond to FmHA's submission.

Enter Judgment consistent with this opinion.

## APPENDIX A

Farmers Home Administration

United States Department of Agriculture

October 22, 1991

Mr. William Gingerella

21 Hiscox Road

Westerly, RI 02891

Dear Mr. Gingerella:

Your Housing Demonstration proposal for "phased conversion" of Farmers Home Administration financed Rural Rental Housing to condominium owner-occupied dwelling units has been considered by the National Office of the Farmers Home Administration.

---

**2.** If conversion is not allowed, it is unlikely that any creditor, including FmHA, would receive 100% of its claim.

Based on the information submitted, they indicated the proposal contains no innovative design features and the concept of condominium housing has already been demonstrated. Furthermore, the Housing Demonstration Program is not intended to be used for servicing problem case Section 515 loans. Accordingly, the proposal has been rejected for participation in the Housing Demonstration Program.

Applicants and borrowers generally have a right to appeal adverse decisions, but FmHA decisions based on certain reasons are not appealable. We have determined that the reasons for this decision in this case make the decision not appealable under FmHA regulations. You may, however, write the Area Supervisor, National Appeals Staff, 3901 West 86th Street, Suite 280, Indianapolis, Indiana 46268–7310.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, handicap, or age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant in good faith exercised any right under the Consumer Credit Protection Act. The Federal Agency that administers compliance with the law concerning this creditor is the Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20580.

Sincerely,

(s) John T. Cooper

JOHN T. COOPER

Chief, Rural Housing

APPENDIX B

Farmers Home Administration

United States Department of Agriculture

July 7, 1992

William Gingerella

21 Hiscox Road

Westerly, RI 02891

Dear Mr. Gingerella:

In response to your inquiry regarding the availability of equity loans from the Farmers Home Administration, please be advised of the following FmHA regulations.

Borrowers who have Rural Rental Housing loans are only eligible for such loans under certain conditions.

FmHA Instruction 1965–B Exhibit E is the regulation regarding pre-payment of loans not subject to restrictive-use provisions. Generally, this would be any loan obligated prior to December 21, 1979, and which has not subsequently become subject to restrictive-use provisions due to servicing actions. One of the incentives available to such borrowers is an equity loan. Borrowers who received their loans after the above date are restricted in prepayment of their loans and are not eligible for any incentives such as equity loans.

If you have any questions, please feel free to call me.

Sincerely,

(s) Richard A. Lavoie

RICHARD A. LAVOIE

District Director