[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
The Appellant herein, Rhode Island Sand Gravel, Inc. (SG), filed an application in January 1989 with the North Kingstown Building Official for a soil and earth removal permit under Chapter 16 of the North Kingstown Revised Ordinances. On August 8, 1989 the Building Official issued a permit which essentially prohibited the applicant from excavating in the manner that it had requested. (The permit is attached hereto as Exhibit A.)
On August 18, 1989 SG filed an appeal with the North Kingstown Zoning Board of Review under the provisions of the Revised Ordinances. After three nights of hearings and submission of briefs by both the applicant and the Town, the Zoning Board of Review denied the appeal, thereby upholding the permit as issued.
The appeal to this court under § 45-24-20 of the Rhode Island General Laws followed, citing the standards in subsection (d) which controls the court's jurisdiction which is not to "substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact."
The appellant owns a 238 acre parcel of land which has had gravel removed therefrom for at least 30 years by it and its predecessors. In filing for a permit the appellant at the hearing presented an excavation plan, which when completed would have created a pond of water of approximately 135 acres with a maximum depth of twenty (20) feet, a mean depth of ten (10) feet and a volume of 440 million gallons of water. The "pond" would have a length of 3800 feet and an average width of 1500 feet, i.e., almost 3/4 mile long and averaging 3/10 mile wide, thus approximating 56% plus of the total acreage of the parcel.
SG's appeal questions the power of the Town through its Building Official and ultimately the Board of Review to impose conditions 3 and 4 upon the permit allowing gravel removal (see Exhibit A).
The testimony and exhibits presented during the hearings revolved around expert opinion testimony as to the effects the sand and gravel removal would have on the surrounding terrain but more importantly on any negative effect on the ground water supply for the Town.
Trial courts when instructing jurors on how to evaluate expert opinion, advise them to "consider and accept all, part
or none of an expert's opinion. However, uncontradicted and unimpeached expert opinion may not arbitrarily be disregarded. You must consider its probative force in the light of all the evidence and give it the weight it merits".
Needless to say, the expert opinions in this matter are at variance, one from the other. Significantly the expert opinions dwell on what will occur based on events which will take place rather than opinions generally given at a trial, as to what occurred based on events which have taken place.
Testimony by the experts revolved on the effect of the creation of this "permanent" water body, whether or not the drainage would result in the stagnation of surface and underground waters; the flow of ground water which may vary between 142,000 to 570,000 gallons per day, the velocity of the water between .5 to 2 feet per day; the need for drainage controls, if so determined, et cetera.
Thus the Board of Review which sits similarly to a jury, but with more "expertise" in the matter was free to accept some or all of the opinions given. Clearly there is in the record probative evidence to substantiate the conclusions reached by the Board of Review as to uphold the granting of the permit with the conditions stated with one exception.
The conditions stated in paragraph 4 pertaining to nonuse "for any purpose other than open space" and the execution and recordation of "a declaration of restrictions" as to future use to open space are beyond the scope of authority given to the Board of Review by the Town Ordinances.
There is no authority given to the Board of Review or to the Building Official which would necessitate an applicant effectively conveying its interest in real estate in order to obtain a permit. This kind of condition violates due process and would be akin to the concept of "inverse condemnation" exemplified by Agins v. City of Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106, (1980).
The matter is remanded to the Board of Review for re-determining whether or not the excavations within the parameters as stated in paragraph 4 may be permitted but with conditions that comply with the authority given in the sand and gravel removal ordinance.