W. FLETCHER, Circuit Judge,
dissenting:
At issue in this case is the constitutionality of Hawai’i’s Act 257, which controls the rent an oil company can charge its dealer/lessees. There are two different constitutional tests that could conceivably apply *859 to Act 257. The first is the “reasonableness” test ordinarily applied to rent and price control statutes. See, e.g., Pennell v. City of San Jose, 485 U.S. 1, 11, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988) (upholding a rent control ordinance because it was not “arbitrary, discriminatory, or demonstrably irrelevant to the policy the legislature is free to adopt”) (quoting Permian Basin Area Rate Cases, 390 U.S. 747, 769-70, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968)). The second is the “substantially advances a legitimate state interest” test ordinarily applied to zoning and other land use regulations. See, e.g., Agins v. City of Tiburon, 447 U.S. 255, 261, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (upholding a zoning ordinance because if’substantially advance[d] legitimate governmental goals”); Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994); Nollan v. California Coastal Comm’n, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).
In Richardson v. City and County of Honolulu, 124 F.3d 1150 (9th Cir.1997), we applied the “substantially advances” test to invalidate a rent control ordinance in which the tenant was able to capture a “premium” resulting from the ordinance. In an earlier appeal in this case, Chevron USA, Inc. v. Cayetano (Chevron I), 224 F.3d 1030, 1035 (9th Cir.2000), this panel went beyond Richardson, holding that the “substantially advances” test must be applied to Act 257 because of the “stipulated possibility that [a dealer/lessee] will be able to capture the value of the decreased rent in the form of a premium.” That “possibility,” in the view of the panel, “separate^] Act 257 from an ordinary rent control situation” in which the “reasonableness” test would be applied. Id. I disagreed with the majority’s analysis in Chevron I, believing that the panel misunderstood Supreme Court case law applicable to rent control and therefore applied the wrong test. Id. at 1042(W. Fletcher, J., concurring in the judgment).
In Chevron I, we remanded to the district court to apply the “substantially related” test to Act 257. After a hearing on remand, at which the only evidence presented was the opinion of one expert per side, the district court held that Act 257 did not satisfy the “substantially related” test. It concluded, “Act 257 effects an unconstitutional regulatory taking given its failure to substantially advance any legitimate state interest.” Chevron USA, Inc. v. Cayetano, 198 F.Supp.2d 1182, 1193 (D.Haw.2002).
If “substantially advances a legitimate state interest” were the proper test to apply to Act 257,1 would vote to affirm the district court. The evidence put on by the State’s expert in support of Act 257 was sufficiently weak, and the countervailing evidence put on by Chevron’s expert was sufficiently strong, that the district court did not err in concluding that this test was not satisfied. My problem is thus not with the manner in which the “substantially advances” test has been applied in this case. Rather, it is with the application of the test in the first place.
As I discussed in my concurrence in Chevron I, the only possible basis for the application of the “substantially advances” test to a rent control statute is dictum in Yee v. City of Escondido, 503 U.S. 519, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992), in which the Supreme Court upheld a mobile home rent control ordinance against a physical takings challenge. The Court refused to consider whether the ordinance constituted a regulatory taking because that question had not been included in the grant of certiorari, but it briefly • distinguished between physical and regulatory takings. It wrote:
[T]he effect of the rent control ordinance, coupled with the restrictions on the park owner’s freedom to reject new •tenants, is to increase significantly the *860 value of the mobile home. This increased value normally benefits only the tenant in possession at the time the rent control is imposed.... Petitioners are correct in citing the existence of this premium as a difference between the alleged effect of the Escondido ordinance and that of an ordinary apartment rent control statute.... [Petitioners contend that the Escondido ordinance transfers wealth only to the incumbent mobile home owner. This effect might have some bearing on whether the ordinance causes a regulatory taking, as it may shed some light on whether there is a sufficient nexus between the effect of the ordinance and the objectives it is supposed to advance. See Nollan v. California Coastal Comm’n [, 483 U.S. 825, 834-35, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) ]. But it has nothing to do with whether the ordinance causes a physical taking.
Id. at 530, 112 S.Ct. 1522.
It is undisputed that Chevron has the capacity to increase the wholesale price of gasoline to its dealer/lessees who benefit from rent control under Act 257. Chevron’s expert testified that “in all likelihood” the combined consequences of Act 257 would be an economic loss for the dealer/lessees and an increase in wholesale gasoline prices:
Question [by the court]: Then why wouldn’t Chevron raise the wholesale price for those stations to completely offset the rent reductions?
Answer [by Dr. Umbeck]: Well, they would certainly try.... [T]hey would try to raise the wholesale price to recoup as much of the lost rent as they could, and the law of demand operating at each of those individual stations, however, is going to limit the total amount they’re able to recoup. In other words, at the stations where they raise the price those stations will have a reduction in the volume of gasoline they sell if the dealer raises his retail prices, which logically he would.... At the individual stations that are affected there’s going to be less revenue generated in total from gasoline sales because they’re going to lose some customers. And so, even if the oil company doesn’t recover all of the rent reduction, that does not mean the dealer is going to benefit because the whole revenue stream is smaller. In fact, in all likelihood both the dealer would lose and the oil company would lose.
(Emphasis added.)
As the challenger of Act 257, Chevron had an obvious interest in establishing that Act 257 would create a premium for its dealer/Iessees since this would suggest that the statute is unconstitutional. Yet Chevron’s own expert testified that “in all likelihood” a dealer would lose money. In other words, according to Chevron’s own expert, there is probably no premium created by Act 257. Far from gaining a premium,”in all likelihood” the dealer/lessees will lose money as a result of Act 257.
It is a long way from the quoted passage in Yee to the panel’s holding in this case. The Court in Yee did not say, even in a case where there was an actual premium, that the Nollan “substantially advances” test would apply. Nor did the Court say that the “substantially advances” test would apply in a case where there was only the probability of a premium, instead of an actual premium. But even if the Court meant in Yee what it did not say, this case is a far cry from Yee. Here, the premium is not actual, nor even a mere probability. Rather, “[i]n all likelihood,” the premium does not exist.
We took a wrong turn in Richardson, we continued on the wrong path in Chevron I, and we are now in the wrong place. Under the panel’s holding, “virtually all rent *861 control laws in the Ninth Circuit are now subject to the ‘substantially advances a legitimate state interest’ test[,]” 224 F.3d at 1048 (W. Fletcher, J., concurring in the judgment), and many of those laws may well be held unconstitutional under that test. Rent control is often inefficient and sometimes unfair. See id. But we should not confuse inefficiency and unfairness with unconstitutionality.
I respectfully dissent.