WERDEGAR, J.,
Concurring. — I concur fully in the majority opinion, which I have signed. I write separately to speak to the current status and meaning of the “reasonable relationship” constitutional standard set out in San Remo Hotel v. City and County of San Francisco (2002) 27 Cal.4th 643 [117 Cal.Rptr.2d 269, 41 P.3d 87] (San Remo Hotel), a decision I authored for the court.
As explained in the majority opinion (maj. opn., ante, at pp. 470-471), in San Remo Hotel we addressed the constitutional standard for reviewing legislatively prescribed, formulaic mitigation fees. We first determined such fees were not subject to the heightened means-ends scrutiny established under the takings clause in Nollan v. California Coastal Comm’n (1987) 483 U.S. 825 [97 L.Ed.2d 677, 107 S.Ct. 3141] (Nollan) and Dolan v. City of Tigard (1994) 512 U.S. 374 [129 L.Ed.2d 304, 114 S.Ct. 2309] (Dolan) for ad hoc, discretionary exactions. (San Remo Hotel, supra, 27 Cal.4th at pp. 665-671.) In reaching this conclusion, we rejected the plaintiffs’ contention that a lack of heightened scrutiny would mean legislatively imposed development mitigation fees would not be subject to meaningful means-ends review, stating: “As a matter of both statutory and constitutional law, such fees must bear a reasonable relationship, in both intended use and amount, to the deleterious public impact of the development. . . . While the relationship between means and ends need not be so close or so thoroughly established for legislatively imposed fees as for ad hoc fees subject to Ehrlich, the arbitrary and extortionate use of purported mitigation fees, even where legislatively mandated, will not pass constitutional muster.” (San Remo Hotel, at p. 671, citations omitted, citing Ehrlich v. City of Culver City (1996) 12 Cal.4th 854 [50 Cal.Rptr.2d 242, 911 P.2d 429] (Ehrlich) [applying Nollan and Dolan to ad hoc fees].) Applying the constitutional standard, we then concluded the challenged housing replacement fee bore a reasonable relationship to the loss of housing caused by conversion of hotel rooms from residential to tourist use. (San Remo Hotel, at p. 673.)
*484 As the majority opinion observes, the court in San Remo Hotel did not specify whether the constitutional provision from which it drew the reasonable relationship test for legislatively formulated development mitigation fees was the due process clause, the takings clause, or both. (Maj. opn., ante, at p. 473, fh. 18.) Because the ordinance at issue in this case does not impose a mitigation fee, the court today has no occasion to address the constitutional derivation or exact dimensions of this reasonable relationship standard. (Ibid.) For future cases, however, it may be helpful to note a significant change in federal constitutional law since San Remo Hotel’s decision, a change that suggests the reasonable relationship test for mitigation fees may be no more demanding than the deferential standard applicable to ordinary land use regulations under the due process clause. (See maj. opn., ante, at pp. 455-456 [land use regulation meets due process limitations if it bears a reasonable relationship to the public welfare].)
At the time we decided San Remo Hotel, the United States Supreme Court’s takings doctrine held a land use regulation “effects a taking if the ordinance does not substantially advance legitimate state interests.” (Agins v. Tiburon (1980) 447 U.S. 255, 260 [65 L.Ed.2d 106, 100 S.Ct. 2138] (Agins).) After our decision, the high court in Lingle v. Chevron U.S.A. Inc. (2005) 544 U.S. 528, 540-545 [161 L.Ed.2d 876, 125 S.Ct. 2074] (Lingle) clarified that this means-ends standard stated a due process principle, not a test for a regulatory taking. But in the meantime, the Agins standard appears to have played a leading role in San Remo Hotel’s statement of a reasonable relationship standard for legislatively formulated development mitigation fees.
In San Remo Hotel, we outlined the broad categories of recognized takings claims, listing last the “substantially advance” standard; we then introduced the plaintiffs’ claims as implicating “the last-mentioned prong of the high court’s takings analysis.” (San Remo Hotel, supra, 27 Cal.4th at p. 665.) And as decisional authority for the reasonable relationship test we applied to those claims, we cited portions of the plurality opinion and of Justice Mosk’s concurrence in Ehrlich, both of which directly or indirectly invoked the Agins “substantially advance” takings test. (San Remo Hotel, at p. 671; see Ehrlich, supra, 12 Cal.4th at pp. 865-867; id. at 870, fn. 7 (plur. opn.) [equating reasonable relationship takings standard with Nollan/Dolan scrutiny and viewing latter as derived from “ ‘substantially advance’ ” test]; id. at p. 897 (cone. opn. of Mosk, J.) [viewing reasonable relationship takings standard as closer to rational basis test than to Nollan/Dolan scrutiny, but deriving it from Agins’s means-ends takings principle].)
San Remo Hotel’s use of a means-ends analysis to evaluate the plaintiffs’ takings claims was appropriate in light of the then-extant “substantially *485 advance” prong of federal takings law. But three years later, in Lingle, the high court “corrected] course” (Lingle, supra, 544 U.S. at p. 548) and eliminated means-ends analysis as a distinct prong of takings law. The court determined that Agins’s formula “prescribes an inquiry in the nature of a due process, not a takings, test, and that it has no proper place in our takings jurisprudence.” (Lingle, at p. 540.) The court explained that Agins had drawn its standard from due process cases, not takings ones, and that means-ends testing of this nature belonged solely to due process analysis: “The ‘substantially advances’ formula suggests a means-ends test: It asks, in essence, whether a regulation of private property is effective in achieving some legitimate public purpose. An inquiry of this nature has some logic in the context of a due process challenge, for a regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause. . . . But such a test is not a valid method of discerning whether private property has been ‘taken’ for purposes of the Fifth Amendment.” (Lingle, at p. 542, citation omitted.) The Lingle court further explained that Nolían and Dolan, though they both quoted the Agins formula, actually rested on the very different principle of “ ‘ “unconstitutional conditions.” ’ ” (Lingle, at pp. 547-548; see maj. opn., ante, at pp. 457-458.)
Given the high court’s abandonment of the idea that a regulation works a taking of private property if it does not substantially advance a legitimate government interest, how should our statement in San Remo Hotel — that legislatively formulated mitigation fees must, as a constitutional as well as a statutory matter, be reasonably related to the development’s impacts — be understood? Does San Remo Hotel state a takings test or a due process test?
Theoretically, one could argue Lingle makes no difference, as it addressed federal constitutional law while the plaintiffs in San Remo Hotel brought their challenge solely under the California Constitution. (San Remo Hotel, supra, 27 Cal.4th at p. 664.) But we observed in San Remo Hotel that the two Constitutions’ takings clauses are, with some exceptions, generally construed congruently, and we therefore analyzed the plaintiffs’ takings claim “under the relevant decisions of both this court and the United States Supreme Court.” (San Remo Hotel, at p. 664.) Had Lingle already been decided, we would have considered it in our analysis.
In light of Lingle, I believe, San Remo Hotel’s reasonable relationship test for legislatively formulated mitigation fees is best understood to state a due process standard, not a takings one. As the Lingle court emphasized, regulatory takings law is centrally concerned not with the “fit” between a regulation and its goals but with the burdens the regulation imposes on a property owner, both absolutely and relative to others in the community. “The owner of a property subject to a regulation that effectively serves a legitimate state *486 interest may be just as singled out and just as burdened as the owner of a property subject to an ineffective regulation. . . . Likewise, an ineffective regulation may not significantly burden property rights at all, and it may distribute any burden broadly and evenly among property owners.” (Lingle, supra, 544 U.S. at p. 543.) San Remo Hotel's reasonable relationship test does not focus on the absolute or relative burden of a mitigation fee, but on whether it is reasonably justified by the legislative goal of mitigating development impacts. As such, it relates most naturally not to whether private property has been taken but to whether the fee regulation is “so arbitrary or irrational that it runs afoul of the Due Process Clause.” (Lingle, at p. 542.)
As explained in the majority opinion, in a due process challenge to police power regulations, the burden of proof is on the party challenging the ordinance, rather than on the government: the challenger must demonstrate that the measure lacks a reasonable relationship to the public welfare. (Maj. opn., ante, at p. 456.) A developer challenging a legislatively mandated mitigation fee under San Remo Hotel would thus need to show the fee lacks a substantial relationship to the deleterious impacts of, or public resource needs created by, the development. This mode of means-ends scrutiny has been generally equated to the rational basis standard. (See Santa Monica Beach, Ltd. v. Superior Court (1999) 19 Cal.4th 952, 978-980 [81 Cal.Rptr.2d 93, 968 P.2d 993] (cone. opn. of Kennard, J.).) Under this deferential form of analysis, for the challenger to show that the city or other entity imposing a fee had not undertaken individualized studies to determine the size of fee needed for mitigating the impacts of each development presumably would not be enough. I am unaware of any decisions suggesting a mitigation fee is arbitrary or irrational merely because it is not demonstrably proportionate to individual development impacts, so long as the fee schedule’s overall scale and structure has a real and substantial relationship to the public measures needed to accommodate and mitigate the effects of the development. (See San Remo Hotel, supra, 27 Cal.4th at p. 672 [reasonable relationship standard does not “open to searching judicial scrutiny the wisdom of myriad government economic regulations”].)
Again, I concur without qualification in the majority opinion, which appropriately refrains from addressing in detail issues that are not before us here. I add the above discussion only as a potentially useful reference point for analysis in any future case where the constitutionality of a legislatively mandated development mitigation fee is at issue.